Delta Lumber Company *v.* Wall et ux.

[80 South. 782, Division B.]

1. FRAUDS. *Statute of. Agreement within the statute of fraud.*
   Where a lumber company had originally contracted with a contractor to furnish material for building a house, but afterwards this contract was abrogated and a new verbal contract made between the lumber company and the owner of the house, by which he was to pay for the material as the work progressed, such last contract was not an agreement to pay the debt of another and unenforceable under the statute of frauds, because not in writing.

2. SAME.
   Such a contract was an original contract between the materialman and the owner and it was not necessary for it to be in writing, in order to impress the building into which material went, with a materialman's lien.

3. CONTRACTS. *Evidence. Accounts.*
   The way in which the account was carried on the books of the materialman was not the material thing that determined whether or not there was a contract between the materialman and the owner—at most it was only a circumstance to be considered along with the other evidence.

4. FRAUDS. *Statute of. Agreement.*
   Where an owner for whom a contractor was building a house agreed to make payments directly to the materialman for ma-

terials going into the house, such agreement was not within the
statute of frauds, as an agreement to pay the debt of another,
but amounted to a promise by the owner to pay his own debt
to a creditor of the contractor.

5. FRAUDS. *Statute of. Estoppel to attack validity of contract.*
   Where because of the failure of the owner to carry out his verbal
   agreement with the materialman to pay for the material used
   in the construction of the owner's house as the work progressed,
   the materialman failed to perfect his lien upon the house; in
   such case, the owner is estopped from asserting the invalidity of
   his verbal agreement under the statute of frauds.

6. MECHANICS' LIEN. *Jury question.*
   Under the facts in this case, as set out in its opinion, the court
   held that the question as to whether or not defendant agreed
   to pay the materialman direct, was for the jury.

7. MECHANICS' LIEN. *Necessity for notice. Contract with owner.*
   Where the owner for whom a house is being built makes an
   original contract with the materialman for material, no notice
   in writing is required by the statute to be given the owner in
   order to establish a materialman's lien.

APPEAL from the circuit court of LeFlore county.
HON. H. H. ELMORE, Judge.

Petition   by the Delta Lumber Company against J.
N. Wall and wife for a menchanic's lien upon a house
erected on land belonging to the wife, but for no lien
on the land.   From a judgment for defendants, plain-
tiff appeals.

The facts are fully stated in the opinion of the court.

*J. B. Harris* and *Alfred Stoner,* for appellant.

*Whittington & Osborne,* for appellees.

ETHRIDGE, J., delivered the opinion of the court.

The Delta Lumber Company filed a petition for a
mechanic's lien upon a house erected for defendants,
J. N. Wall and his wife, situated upon certain lands
described in the petition, alleging that on the 18th day .

of December, 1916, petitioner entered into a verbal agreement or contract with defendants to furnish certain materials to be used in the erection of said house. By the terms of the contract said materials were to be furnished when demanded by the said Wall and used to erect said building on a lot of land owned by Mrs. Wall; that petitioner was to receive six hundred and ninety-six dollars and eighty-five cents, one-third to be paid when the material was on the ground, one-third when the house was framed up, and the other when the building was completed; that on the 9th day of March, 1917, petitioner finished furnishing said materials, and during the time between the letting of the original contract and the completion of the building, petitioner, at the special request of defendant Wall, furnished extra material in and about the erection of said building to the amount of two hundred and fifty-six dollars and seventy-seven cents, an itemized account being filed with the petition; that there was due at the time of the filing of the suit, after deducting all just credits and offsets, the sum of four hundred and forty-six dollars and fifty-two cents; that petitioner claims a lien upon said building, but not upon the land. The original petition was amended with reference to the amount of lumber furnished.

The defendants filed an answer, and say that on or about the 1st day of December, 1916, they entered into a contract with Will Lacour to erect said building, furnish all materials of all kinds, and all labor, including plumbing and hardware, painting, etc., for the sum of one thousand, four hundred forty dollars, with the understanding that the building was to be completed in a good and workmanlike manner, and delivered to the defendants free from all liens and incumbrances by the first of March, 1917; that the amount was to be paid as the work progressed, with the understanding that no amount was to be paid by the defendants in excess of the estimate of the defendants of the work

done and material furnished up to the time of any partial payment. They denied that they agreed with Lacour to furnish extras, and pay evtra sums as set forth in the amended petition. They, further answering, say the Lacour never completed the construction of said building, and that the double doors were defective, not properly installed, and that the roof leaks in many places, and that it was not constructed in a good and workmanlike manner. They, further answering, say that Lacour furnished material and did construct said building except as before stated; that as the work progressed they paid Lacour one thousand, five hundred and ninety dollars and forty-three cents, which is in excess of the original contract price, plus the one hundred dollars, and say that Lacour is indebted to the defendants in the sum of ninety dollars and forty-three cents; that they paid Lacour the one hundred dollars for extra work.

One Sandifer was assistant manager of the lumber company, and testified for the complainants, and states that Lacour had asked the lumber company for an estimate on the material to be furnished, and that they had given him an estimate and made an agreement with Lacour to furnish the lumber to erect said building, to be paid for in installments, but that, before any of the material was delivered under this contract, Mr. Wall came to the lumber company's place of business and stated that he believed that Lacour was a crook, and that he (Wall) wanted to deal direct with the lumber company, and that he would pay the lumber company direct, and that they could pay Lacour; that Wall said he wanted to see the lumber company get its money, and that he would make payments to the lumber company as the work on the house progressed; that the amount was entered on the books of the lumber company under the heading, ''Will Lacour, Wall Job;'' that Mr. Wall paid some of the money for the material as the work progressed by giving his checks, and that

when the building was completed Wall was requested to pay the amount, and was notified at all times that the company expected Wall to pay the material bill; that, in addition to the bill furnished Lacour, Wall had other outbuildings erected, and bought lumber from the lumber company to be used in such buildings, which was charged to Wall on personal account; that Wall paid these bills, and the checks paying said bills were marked in some cases "account to date," and in some cases "account in full," but that it was not intended to cover the account for the house erected by Lacour.

A. G. Crook, manager of the Delta Lumber Company, testifies: That Wall came to him about the middle of November and stated that he wanted to build a residence, and mentioned some houses recently built. That he wanted a house like one of the buildngs with some modifications, and asked the witness who built the house, and witness told him Lacour, and Lacour submitted a plan to Wall. In a few days Mr. Wall came to the plant to look over the grades of lumber the estimate called for, and witnesss showed him different grades, and Wall stated he was pretty sure he would have the work done. That a few days before they began to haul lumber, Wall came down and said he heard that Lacour was crooked, and he did not want to have any dealings with him; that he wanted to have all dealings with the lumber company. That he explained to Wall that on those contracts the company wanted three payments, and that every time he would give a check he would take out one-third of the lumber bill and turn the balance over to Lacour, and that Wall said that would be all right, so the material was delivered to his wagon. That Wall came in person a good many times and saw the lumber put in wagons. That all of the lumber was checked out that was put on his wagons, and that he bought a good deal of additional material, which was charged from time to time. That the first payment or check was made to

the Delta Lumber Company and turned over to Lacour, who turned it over to the lumber company. The second payment by Wall was paid direct to the lumber company, the check payable to the Delta Lumber Company. When the house was completeed the company notified Mr. Wall on several occasions. Finally one day witness met him, being about the middle of May, 1917, and Wall said, "I will make you a check, or be in to see you in a few days." That he had never paid the debt.

Wall in his testimony denied the things testified to by these witnesses, and claimed that his contract with Lacour covered the entire construction, and that he had overpaid Lacour, and that no notice was served on him under the statute prior to such payment to Lacour.

At the conclusion of the evidence the circuit judge granted a peremptory instruction for the defendants Wall, and the lumber company appeals here.

The appellees contend that there was no justification in the evidence to sustain a materialman's lien against the property, and that, considering the testimony of the complainants to be true, it amounts merely to a promise to pay the debt of another, and comes within the statute of frauds, and that no recovery can be had, and consequently that the trial judge properly instructed the jury to find for the defendants.

We think from an examination of the evidence for the complainant or plaintiff that, if it be conceded that these statements are true, there was an original contract between the lumber company and Wall for said material, and this contract of course does not have to be in writing to impress the building into which such material went with a materialman's lien. It is immaterial that the lumber company had previously made an agreement with Lacour to furnish the lumber to him, because if they had done so they could have established a lien by serving notice under the statute prior to the payment of the contract price. If com-

plainant's testimony be true, Wall's act caused them to abrogate their contract with Lacour and deal with Wall as the original contractor.

The way the account was carried on the book is not the material thing that determines whether or not there was a contract. At most it is only a circumstance to be considered along with the other evidence upon the subject as to whether there was a contract between Wall and the lumber company, or whether the contract was really with Lacour. Even if we take Wall's theory of the evidence of the complainant that what passed between Wall and the lumber company was a mere verbal agreement on the part of Wall to pay the debt incurred by Lacour for the material, still the statute of frauds would not prevent the action in this case. It is not a mere promise by Wall to pay Lacour's debt. It is an agreement by Wall to pay the amount he owed Lacour for the contract to the lumber company, and seems to fall within the principle announced by this court in *Lee* v. *Newman,* 55 Miss. 365. In the second syllabi of the case the following is laid down:

"Statute of Frauds—Agreement to Pay to Creditor of Promisee.—Where a vendee of land agrees to pay a part of the purchase money to a creditor of the vendor, the agreement is, not to pay the debt of another, but to pay his own debt to some person other than his own creditor. And the facts that the payment is to be made to a third person, that in paying his own debt he extinguishes that of another, and that the liability of that other continues the same after as before his undertaking, do not bring the agreement within the statute of frauds."

Under Wall's theory of the case, his promise, as testified to by the manager of the lumber company, was to pay his own debt to Lacour to the lumber company instead of to Lacour, to protect the lumber company against loss for material furnished to build the house of Wall. If no promise had been made by Wall

to the lumber company, the lumber company could have established a lien upon the house by the simple expedient of giving notice of the amount ,of their debt for such materials, and no doubt would have done so. At all events the lumber company was warranted in, relying upon the express promise of Wall to meet and discharge this claim, and Wall would now be estopped to take advantage of his own wrong. If Wall contends there was no such agreement, this presented a question of fact to be decided by the jury under a proper instruction, and if the jury believed that Wall made the promise or agreement as testified by the witnesses for the lumber company, the lien would be established, even though no notice in writing was given as required by the statute.

We think the court below was in error in granting the peremptory instruction, and the judgment is reversed, and the cause remanded.

*Reversed and remanded.*