**Theola S. BUSBY, Plaintiff-Appellant,**

v.

**S. B. DAWS et al., Defendants-Appellees.**

No. 76–1087.

United States Court of Appeals,
Fifth Circuit.

April 10, 1979.

Rehearing Denied May 10, 1979.

---

Paul M. Neville, Meridian, Miss., for plaintiff-appellant.

Matthew Harper, Jr., Laurel, Miss., for Amerada-Hess.

W. Arlo Temple, Meridian, Miss., Stanford Young, Waynesboro, Miss., for S. B. Daws, et al.

M. D. Tate, II, Picayune, Miss., for Anderson.

Kenneth I. Franks, Luther M. Thompson, Jackson, Miss., for Hughes, et al.

McKibben & Stack, Charles S. Stack, Jackson, Miss., for Stack.

Before COLEMAN, SIMPSON and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

On or about September 16, 1964, a mineral rights and royalty transfer conveying certain interests to S. B. Daws was signed in the names of P. A. and Theola S. Busby and acknowledged before an Alabama notary public. The transfer document subsequently was duly recorded in the office of the Chancery Clerk of Waynesboro, Wayne County, Mississippi. In this diversity case Theola Busby asserts that she did not in fact sign the instrument in question and had no knowledge concerning the conveyance to S. B. Daws until 1971. She asks that the instrument and conveyance be declared null and void. After a bench trial the district court held that her claim was without merit and rendered final judgment dismissing her suit with prejudice. For the reasons set forth below, we affirm the district court's decision.

■ The facts of this case are in great dispute. Both P. A. Busby and the Alabama notary public were deceased at the time of trial, so the only witnesses to the transaction in question were Mrs. Busby and Mr. Daws. The testimony of Mrs. Busby and Mr. Daws was in conflict concerning all the material issues in the case. The district court, after hearing testimony and weighing the evidence presented by all of the parties to this dispute, believed Mr. Daws and disregarded most of the testimony of Mrs. Busby.[1]

1. The district court was clearly cognizant of the conflicting nature of testimony to be offered by Mrs. Busby and Mr. Daws from the very beginning of the trial. Supplemental Record at 7–8.

■ Our review of the district court's factual findings is limited by the clearly erroneous standard of rule 52(a), which provides in pertinent part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R. Civ.P. 52(a). A finding of fact is clearly erroneous when the reviewing court, after examining the entire record, is left with a definite and firm conviction that a mistake has been committed by the district court. *Dresser Industries, Inc. v. Fidelity & Casualty Co.*, 580 F.2d 806, 807 (5th Cir. 1978). In *Chaney v. City of Galveston*, 368 F.2d 774 (5th Cir. 1966), this court observed that:

> Where the evidence would support a conclusion either way, a choice by the trial judge between two permissible views of the weight of evidence is not clearly erroneous, and the fact that the judge totally rejected an opposed view impeaches neither his impartiality nor the propriety of his conclusions. Such total rejection cannot of itself impugn the integrity or confidence of the trier of fact. It is well settled that in order for a reviewing court to set aside findings of fact by a trial court sitting without a jury, it must be clearly demonstrated that such findings are without adequate evidentiary support in the record, or were induced by an erroneous view of the law, and the burden of showing that the findings are clearly erroneous is on the one attacking them. The findings of a district court are not, therefore, lightly to be set aside, for the Court of Appeals is not a trier of facts, and does not substitute its own judgment for that of the trial court.

*Id.* at 776 (footnotes omitted). We have carefully examined the record in this case and conclude that the district court was not clearly erroneous in its findings.

In the pertinent portion of its opinion, the court below stated as follows:

> Hence, in deferring to the credibility choices made by the court, we note that the court heard all of the conflicting testimony with full

The great probabilities are that the conveyance of September 16, 1964 does not bear the signature of Theola S. Busby but under the circumstances in this case she is estopped to deny her signature thereto. Without recounting in detail the evidence surrounding the delivery of this instrument to S. B. Daws, the plaintiff and her husband, P. A. Busby, appeared at the office of S. B. Daws and requested payment of the $2,000 consideration. The instrument of conveyance then appeared executed as it was delivered by P. A. Busby to Daws. The plaintiff remained in their car outside his office and entrusted these instruments to her husband for delivery. Busby returned from the bank with the money in a brown envelope and delivered it to the plaintiff. The record shows that this couple executed almost a dozen mineral conveyances of one kind or another in this oil field in which the Busby family had vast holdings. Division orders were executed to members of the family after the execution of this conveyance which did not involve her name. Several years after the execution of that instrument and after the death of the indicated parties, this suit was instituted. The Court finds and holds that this conveyance of September 16, 1964 does not bear the genuine signature of Theola S. Busby but the evidence shows that in all fairness and equity that she is estopped to deny her signature thereto, and the ultimate validity of that conveyance and receipt of even date. The plaintiff's signature was affixed to those instruments with her express authorization and approval.

Record, vol. II, at 535–36. Thus, after considering the weight and credibility of the evidence given at trial the court determined that Mrs. Busby should be estopped from denying the authenticity of her signature on the document of conveyance.

Mr. Daws testified to the following specific events during the proceeding below: Mr. and Mrs. Busby initially contacted him

knowledge that the essence of this case involved the word of Mrs. Busby against that of Mr. Daws.

in early September 1964, and Mrs. Busby stated to Mr. Daws at that time that she wished to sell her mineral rights. Mr. Daws first tendered a deed to the mineral rights and a draft for $2,000 to Mr. and Mrs. Busby by mail, but after Mr. Busby stated that Mrs. Busby wished to receive payment in cash Mr. Daws agreed to pay in that form *if* the cash were transferred at Mr. Daws's place of business in Waynesboro, Mississippi. Mr. Busby presented the fully executed and acknowledged document of conveyance to him in Mr. Daws's office in Waynesboro on or about September 16, 1964. Mr. Daws asked for and prepared a receipt for the $2,000. He then gave the receipt to Mr. Busby so that Mr. and Mrs. Busby might affix their signatures thereto. Mr. Daws and Mr. Busby left Mr. Daws's office and proceeded to the street below, where Mrs. Busby was waiting in the Busbys' automobile. Mr. Daws told Mr. and Mrs. Busby that he had part of the $2,000 (which he had received from Mr. Nolan Clark) and proceeded to a bank where he obtained the remaining cash. Mr. Busby appeared at the bank and gave Mr. Daws the receipt signed with the names of both Mr. and Mrs. Busby in exchange for an envelope containing the $2,000. Mr. Daws and Mr. Busby then returned to the Busby automobile, where Mr. Busby gave the envelope to his wife. After exchanging greetings with Mrs. Busby, Mr. Daws returned to his office with the signed document of conveyance and receipt in his possession. Although Mrs. Busby denied that she took any of the actions referred to by Mr. Daws, and in fact denied she was even present in Waynesboro on September 16, the court obviously rejected her testimony, as it was entitled to do, and accepted that of Mr. Daws.

In addition to these occurrences in September 1964, Mr. Daws testified that on one subsequent occasion Mrs. Busby stated in his presence that she had conveyed her mineral interest to Mr. Daws and thus there was no need for her to sign either a complaint in an action to cancel a mineral lease or a lease covering the mineral rights conveyed to Mr. Daws in the September 1964 instrument.[2] He further testified that in 1968 Mrs. Busby remained silent when Mr. Daws stated in her presence that he had purchased this interest from her. Although his testimony once again was challenged in its entirety by Mrs. Busby, the district court was entitled to find that Mr. Daws was a credible witness while Mrs. Busby was not to be believed.[3]

Since the court below was not clearly erroneous in accepting the testimony of Mr. Daws as true and rejecting most of that of Mrs. Busby, we now must determine whether Mrs. Busby should be estopped from denying the authenticity of her signature on the mineral rights and royalty transfer document based upon the facts as stated by Mr. Daws. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires us to look to the substantive law of the forum jurisdiction, Mississippi, in our analysis. In *Crowe v. Fotiades,* 224 Miss. 422, 443–444, 80 So.2d 478, 486 (1955), the Supreme Court of Mississippi expressed the essential elements of equitable estoppel.

The essential elements of estoppel are conduct and acts, language or silence, amounting to a representation or concealment of material facts, with knowledge

---

**2.** Mrs. Busby was eventually convinced to sign the complaint and the lease agreement after it was explained to her that all Busby heirs and their spouses, regardless of any interest in the mineral rights, should sign the complaint and lease in order to give a marketable leasehold interest.

**3.** Mrs. Busby has argued that Mr. Daws was completely discredited by the testimony of Nolan Clark, who testified on direct examination that he gave Mr. Daws money only after September 16, 1964. We do not agree. First, the question of the source of the $2,000 in cash which Mr. Daws delivered to Mr. and Mrs. Busby on September 16 is at best a peripheral issue in this case. Second, on cross-examination Mr. Clark seemingly wavered in his testimony and stated that he did not *think* he gave Mr. Daws any cash on September 16. Finally, the district court was entitled to disbelieve Mr. Clark on this issue, or at least to feel that he might not have a clear recollection of an event which transpired over ten years prior to his testimony.

or imputed knowledge of such facts, with the intent that representation or silence, or concealment be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence.

Accord, e. g., *Perkins v. Kerby,* 308 So.2d 914, 917 (Miss.1975); *Harris v. American Motorist Insurance Co.,* 240 Miss. 262, 126 So.2d 870, 875 (1961); *Peeler v. Hutson,* 202 Miss. 837, 32 So.2d 785, 787–88 (1947); see *Gullett v. Best Shell Homes, Inc.,* 312 F.2d 58, 61 n.2 (5th Cir. 1963).

█ The burden of establishing the basic constituents of estoppel is on the party asserting the operation of the estoppel. *McAlister v. McAlister,* 254 Miss. 877, 183 So.2d 513, 516 (1966). All the necessary elements of estoppel must be established, *Roberts v. Bookout,* 162 Miss. 676, 139 So. 175, 176 (1932), and the party with the burden must do so by the preponderance of the evidence. *Gates v. Owen Chevrolet Co.,* 294 So.2d 179, 180 (Miss.1974). Finally, the doctrine should be applied cautiously and only when equity clearly requires it. *Bright v. Michel,* 242 Miss. 738, 137 So.2d 155, 159 (1962).

The district court held that "in all fairness and equity" Mrs. Busby was estopped from denying the authenticity of her purported signature on the mineral rights and royalty transfer. Applying the general principles of the Mississippi law of estoppel to the facts found by the district court, we agree.[4] The credibility choices made by the district court enabled it properly to conclude that Mrs. Busby should be equitably estopped from now denying the authenticity of the signature appearing on the mineral rights and royalty transfer. In particular, the following facts support the operation of an estoppel: (1) the initial contact between Mr. Daws and Mrs. Busby in which

Mrs. Busby represented that she wanted sell her mineral interests; (2) Mrs. Busby's presence in Waynesboro on September 16, 1964, during which time she witnessed Mr. Busby and Mr. Daws enter the bank and return with an envelope containing $2,000, which was then handed to her by her husband; (3) Mrs. Busby's initial refusal to sign a complaint and mineral lease—she saw no need to sign these documents because previously she had sold her rights in the mineral interests involved to Mr. Daws; and (4) Mrs. Busby's silent presence at discussions where various individuals, including Mr. Daws, indicated that she had sold her mineral rights to Mr. Daws.

In sum, Mrs. Busby's conduct amounted to representations that she wished to sell her mineral interests, that the signature Theola S. Busby on the transfer document was genuine, and that she had sold those interests. It is clear that Mrs. Busby intended that Mr. Daws rely on these representations, for she received the envelope containing the purchase price knowing that Mr. Daws thought he had purchased her mineral rights. Mr. Daws did not know that Mrs. Busby had not signed the instrument—the transfer document he received bore the signatures of both grantors and the acknowledgment of a notary public. If the operation of estoppel were denied under the circumstances of this case, Mrs. Busby would be able to disavow a transaction that she surely effected. Such a result would be inequitable to Mr. Daws and his codefendants. Under the tests set forth in *Crowe v. Fotiades,* the application of estoppel is required in this case.

Since we affirm the district court's judgment dismissing Mrs. Busby's complaint with prejudice on the ground that she was estopped to deny the authenticity of her signature, we need not reach the question

4. It should be noted that Mr. Daws and his codefendants did not expressly raise the affirmative defense of estoppel in their answer, as required by Fed.R.Civ.P. 8(c). However, their answer alleged facts which would work an estoppel on Mrs. Busby if established at trial. Record, vol. II, at 444–45. Since the evidence adduced at trial clearly indicated that estoppel

had been raised, the issue will be treated as having been tried by express or implied consent of the parties. Fed.R.Civ.P. 15(b). See *Wansor v. George Hantscho Co.,* 570 F.2d 1202, 1208 (5th Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978); *Federal Sav. & Loan Ins. Corp. v. Hogan,* 476 F.2d 1182, 1187 (7th Cir. 1973).

whether, under Mississippi law, Mrs. Busby would be presumed to have adopted or authorized the signature of another on the document of conveyance as her own. Similarly, we need not discuss whether Mrs. Busby sustained the heavy burden of proof required to overcome the presumption of authenticity that arises when an instrument is acknowledged before a notary public.

AFFIRMED.