**George S. HAMILTON, Plaintiff,**

v.

**Howard S. BRADFORD, William E. Bradford, and Helen B. Anderson, Defendants.**

**Civ. A. No. W78–0051(N).**

United States District Court, S. D. Mississippi, W. D.

May 9, 1980.

Supplemental Memorandum Opinion Aug. 7, 1980.

James Leon Young, E. Stephen Williams, Young, Scanlon & Sessums, Jackson, Miss., for plaintiff.

Jack E. Pool, John R. Kingsafer, Pool & Hudson, Natchez, Miss., for defendants.

## MEMORANDUM OPINION

WALTER L. NIXON, Jr., District Judge.

The plaintiff, George S. Hamilton, a resident citizen of the State of California, brought this action against the defendants, Howard S. Bradford and Helen B. Anderson, resident citizens of the State of Mississippi, and William E. Bradford, a resident citizen of the State of Louisiana. Plaintiff alleges that he entered into a contract with the defendants for the purchase of certain real property located in Jefferson County, Mississippi, and that the defendants breached their agreement with plaintiff and subsequently negotiated the sale of the property to a third party, who at all times had knowledge of the contract between plaintiff and defendants.

The plaintiff prays for issuance of this Court's order granting specific performance of the contract, by directing defendants to execute a deed conveying all the real estate included in this contract to the plaintiff. He also seeks damages in the sum of $75,000 for costs, expenses, and injury incurred by him as a result of the alleged wrongful actions of defendants.

Plaintiff further requests that if specific performance is not granted against all the defendants, it should be granted against the defendants, Howard S. Bradford and Helen B. Anderson, for their two–thirds undivided interest in the property, and that plaintiff be awarded $175,000 for costs, expenses, and other damages. Finally, Hamilton requests that if specific performance is not granted against any defendants, he should be given a judgment for the sum of $375,000 as damages for breach of contract.

The defendants deny the execution of a valid contract with the plaintiff and further state that the instrument that was executed contained the signatures of only two of the defendants, Howard S. Bradford and his sister, Helen Bradford Anderson, while, in fact, their brother, William E. Bradford also owned an undivided one–third interest in the property.

This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332. After hearing all the testimony of the witnesses and considering the exhibits admitted at trial, the Court makes the following findings of fact and reaches the following conclusions of law:

## FINDINGS OF FACT

In early 1978, the plaintiff, a well–known movie actor and film producer, became interested in purchasing properties in the Natchez, Mississippi area. One of such properties, known as the Richland Plantation (Richland), has resulted in this litigation.

Jeannette Serio (Serio), a real estate broker for Charles L. Barry & Associates in Natchez, Mississippi, was authorized by the plaintiff to negotiate the purchase of several properties in the Natchez area. Exhibit P–5 is a copy of the newspaper publication formally announcing George Hamilton's appointment of Jeannette Serio as his broker.

In early May, 1978, Serio first learned that Richland might be for sale, and she contacted the plaintiff and so informed him and he expressed his interest. Plaintiff authorized Serio to negotiate the contract, provided that the property could be purchased for under $200,000.

On May 19, 1978, Serio and Barry met with the defendants, Howard Bradford and Helen Anderson, to discuss the purchase of Richland Plantation. A copy of the contract (Exhibit P–1) which was negotiated during the May 19 meeting and signed by Jeannette Serio as agent for George Hamilton, and by Howard S. Bradford and Helen B. Anderson, Sellers, is attached hereto and made a part of this Memorandum Opinion as *Appendix A*. George Hamilton signed the contract on May 29, 1978, when he inspected the property.

The Richland Plantation and the surrounding acreage were inherited by Howard S. Bradford, Helen B. Anderson, and William E. Bradford, from their mother, Ora S. Bradford, who died in June, 1977. The will named all three children as co–executors and also granted Howard Bradford a homestead interest.

During the trial, Charles Barry and Serio testified that they questioned Howard Bradford and Helen Anderson on May 19, 1978, concerning their brother's ownership in the estate. Serio and Barry both testified that the defendants told them their brother, William, had no ownership in the home or the acreage that was to be sold to the plaintiff. Furthermore, Brent Forman and Everette Truly, law partners who represented both the purchasers and sellers in the real estate transaction, testified that Serio and Barry acted very surprised when they were told in June that William Bradford did in fact have an interest in the estate to be sold to the plaintiff. As the trier of fact, the Court finds no evidence that refutes the statements of these witnesses.

Helen B. Anderson testified that although William E. Bradford was not present on May 19, 1978 when the contract was signed, she and Howard had previously discussed the terms of the contract with William, and that he had agreed thereto. She also testified that all three Bradford heirs had agreed to the sale price of $180,000 for the plantation, and that William was looking to Howard and Helen to handle the various details of the transaction. Although William testified that he did not see the contract until after July 15, 1978, he admitted that his sister's testimony was correct and that he had full knowledge of the transaction and was eager to conclude it under the agreed–upon terms. Furthermore, William participated in the negotiations of an indemnity agreement to attempt to consummate the sale to Hamilton.

As stated previously, during the meeting of May 19, 1978, Helen Anderson and Howard Bradford signed the contract along with Jeannette Serio as agent for George Hamilton. The defendants made a few handwritten alterations to the contract to which the plaintiff's agent agreed. Mrs. Serio also added her 6% commission fee of $10,800 to the $180,000 purchase price, and Mr. Barry tendered a $1,000 check on the plaintiff's account as earnest money. Because of Howard Bradford's reservations concerning the plaintiff's check being written on a California bank account, Barry later gave the defendants a $1,000 check written on the C. L. Barry Trust account.

When the plaintiff went to Natchez on May 29, 1978, to inspect the property, he personally signed the contract and paid an additional $4,000 in earnest money to the defendants, Howard Bradford and Helen Anderson by a check drawn on the C. L. Barry Trust account. After meeting with Barry and Forman in downtown Natchez and signing the contract, Hamilton returned to the Richland Plantation, where he visited with Howard Bradford and Helen Anderson and everyone seemed "happy and positive" about the sale of the plantation.

Approximately the first or second week of June, 1978, Serio and Forman learned from Truly that William Bradford had an interest in the property. Mr. Truly, however, informed them that William had agreed to the sale. Shortly thereafter, Forman also discovered from Truly that the defendants had not yet received their mother's estate tax clearance letter.

In anticipation of the closing of the sale of Richland with other purchases, plaintiff borrowed $250,000 from the Imperial Bank of Los Angeles, California, on June 15, 1978.

On or around June 26, 1978, Mr. Forman, feeling that the transaction could not close because of the Internal Revenue Service's lien on the estate, wrote Howard Bradford and Helen Anderson, requesting that the estate be released from the lien or that clearance letters be obtained so that the transaction could be completed. Mr. Truly, however, advised Helen Anderson and Howard Bradford not to request an expedited estate tax audit or even contact the I.R.S. about expediting the clearance letter, because he did not want the I.R.S. to know that the defendants were selling the estate for a price much greater than the value appraised by the I.R.S. when the estate taxes were imposed.

In early July, 1978, Helen Anderson, Howard Bradford and William Bradford met with Mr. Truly in Natchez to discuss an indemnity agreement that would include additional acreage to protect George Hamilton, the purpose of which was to be used to allow the parties to close the transaction prior to the receipt of the estate tax clearance letters. The Court finds this meeting to be conclusive evidence that William Bradford was at all times participating in the sale of Richland to Hamilton.

On July 31, 1978, Howard Bradford visited the office of Barry and Serio to state that he was tired of waiting for his money and that if it was not in Natchez by Friday, August 4, 1978, the deal was off. Mr. Barry told Mr. Bradford that Mrs. Serio would fly to California, have the necessary documents signed and procure the money for the defendants.

On August 1, 1978, Jeannette Serio went to Brent Forman's office prior to leaving

for California, where she met with Mr. Petrosek, president of a bank in Natchez, Forman's secretary, and David Bramlette, a partner in the Adams, Forman, Truly, Ward, Smith & Bramlette law firm, in order to review all the documents that she was to take to California. Mr. Forman had left town on vacation, so David Bramlette prepared the documents (Exhibits P–9, P–16), which Serio then took to California for George Hamilton's review and signature. Included in these documents were: (1) the deed of conveyance of Richland Plantation (P–12); (2) a deed of trust (P–13); (3) an indemnification and agreement not to encumber (P–10); and (4) three promissory notes payable to Howard S. Bradford, William E. Bradford, and Helen B. Anderson, respectively (P–14, P–15, P–16).

On August 2, 1978, Howard Bradford again stopped by Charles Barry's office, and while he was there Barry telephoned Hamilton in Los Angeles to tell him that Mrs. Serio was on her way to California with the above documents. Mr. Bradford asked to speak to the plaintiff, and told him that the estate tax lien had been cleared and that the defendants wanted their money. The plaintiff responded by telling Mr. Bradford that he would give his check for payment to Serio for delivery. Bradford testified that he told Hamilton that the property was still his if the money was delivered by August 4, 1978. At the time of this telephone conversation, the tax lien had not been removed from the estate.

On August 3, 1978, Jeannette Serio met with George Hamilton in Los Angeles, California, and he executed numerous closing documents for several real estate purchases, including those for the Richland Plantation purchase. Hamilton executed his personal check in the amount of $53,322.00 payable to the Adams, Forman, Truly, Ward, Smith & Bramlette law firm, pursuant to Serio's instructions. Serio testified that David Bramlette asked her to instruct plaintiff to make the check payable to the law firm.

Charles Barry picked Jeannette Serio up at the Alexandria, Louisiana, airport on August 4, 1978, and immediately drove to the Forman, Truly office in Natchez. Since Brent Forman was still on vacation, Barry and Serio delivered to Everette Truly the check, three promissory notes, a deed of trust executed in favor of the defendants and other papers relating to the Richland purchase. Mr. Truly took the documents and the check from Serio and Barry and put them into the law firm safe, and did not deposit the check until the following Tuesday, four days later. Truly told Serio and Barry that he would not write a check on his firm's trust account to pay the defendants the purchase price until Hamilton's check was collected on.

On Tuesday, August 8, 1978, Howard Bradford visited Everette Truly in his office, and Truly instructed Bradford that he had George Hamilton's check which was made payable to the law firm. Mr. Bradford then stated that he did not want Hamilton's check but asked Truly if he would give him his personal check. Truly told Bradford that his firm would not write a check against their account to cover Hamilton's check, and advised Mr. Bradford that in his opinion all rights under the contract expired on July 15, 1978. Irrespective of this conversation with Howard Bradford, Truly later deposited Hamilton's check in his law firm's trust account.

After returning from his vacation on August 17, 1978, Brent Forman prepared for Jeannette Serio's signature a letter to the defendants demanding sale of the Richland Plantation to the plaintiff; however, the defendants had already begun negotiations to sell the plantation to a third party for a higher price.

On August 15 and 24, 1978, the defendants received estate tax clearance letters from the Internal Revenue Service and the Mississippi State Tax Commission, respectively, and subsequently, on August 24, 1978, negotiated the sale of Richland Plantation to H. C. Brandt. Truly acted as attorney in the August 25 contract.

The George Hamilton check cleared the firm's account on August 22, 1978, and Truly testified that he was aware of its clearance and that he had informed the defend-

ants of this prior to the signing of the contract with Brandt on August 15, 1978. However, Howard Bradford testified that he did not know the money was in Truly's account and furthermore that he was not instructed that Hamilton had executed all the documents. Howard Bradford further testified that if he had known the money was in Truly's account he nevertheless would have sold the property to the plaintiff. William Bradford also testified that if he had known that the $53,322 was in Mr. Truly's bank, he would have sold the property to the plaintiff. Mrs. Anderson, however, testified that "she thought Howard had told her that Hamilton's money was in Truly's bank" prior to the signing of the Brandt contract on August 25, 1978.

The Court is of the opinion that regardless of the conflicting testimony, the defendants either had actual or constructive knowledge of the plaintiff's money in the law firm's account on or prior to August 25, 1978, when the contract was negotiated with Brandt. The undisputed evidence is that Brandt had knowledge of the Hamilton contract prior to the August 25, 1978 negotiation.

■ Having heard the testimony of all the witnesses and reviewed the exhibits admitted at trial, the Court is of the opinion that the plaintiff, George Hamilton, at all times relevant to this lawsuit was and is ready, willing and able to purchase the Richland Plantation and perform the contract. Furthermore, the Court finds that although the plaintiff acted in good faith in his attempts to close the sale of the Richland Plantation in total compliance with the request of the defendants, the defendants, their agents and/or attorney never tendered performance of their contract with the plaintiff.

## CONCLUSIONS OF LAW

This Court, whose jurisdiction is invoked pursuant to 28 U.S.C. § 1332, is *Erie* bound to follow the substantive law of the State of Mississippi.

■ We are of the opinion that the instrument signed on May 19, 1978, is a valid and enforceable contract. At trial, on Motion for Directed Verdict, the defendants argued that the May 19, 1978 instrument was nothing more than an option to purchase. However, the Court finds such assertion without merit. In *Cole v. Haynes*, 216 Miss. 485, 62 So.2d 779 (1953), the Mississippi Supreme Court specifically stated:

"Whether the nature of a contract is an option or a bilateral obligation to purchase is to be determined not by the name which the parties have given it, but by the nature of the obligations which it imposes. There it appears that the general intention of the parties was to consummate a sale, that intention should be effectuated. The entire present instrument indicates that the parties thought that this was a contract to purchase and sell, creating mutual obligations on both parties." *Id.* 62 So.2d at 780–781.

The contract in the instant case (Exhibits P–1, P–2), entitled "Contract to Buy and Sell", clearly indicates that the intention of the parties was to have a mutually binding agreement for the sale and purchase of Richland Plantation. Furthermore, the testimony of the plaintiff and all of the defendants demonstrated that the buyers and sellers intended at all times to buy and sell Richland Plantation.

The defendants contend that the contract was no longer binding after July 15, 1978, as set out in the contingencies clause. Everette Truly testified that he advised the defendants that the contract was invalid after July 15, 1978. The Court, however, disagrees with these contentions.

On page one of the contract (Exhibit P–1 or P–2) the parties agreed to the following:

"Seller hereby covenants and agrees to sell to the Buyer, and Buyer hereby covenants and agrees to purchase from the Seller.

\* \* \* \* \* \*

"The Seller agrees to deliver to the Buyer, *a good and valid warranty deed* conveying the property aforesaid when the balance has been paid or tendered.

Should the title be satisfactory and acceptable to the attorney for the Buyer, and the Buyer shall fail or refuse for any reason to pay the balance of the purchase price, then the deposit and earnest money herein referred to shall be forfeited to the Seller and shall be complete and liquidated damages for the failure of the Buyer to purchase in the premises." (Emphasis added).

The terms of this contract obligated the defendants to cure title in order for the transaction to be closed. More specifically, the defendants were obligated to satisfy the estate tax lien so that the title could pass without any encumbrances. 92 C.J.S., *Vendors and Purchasers* at § 201 states:

"A conveyance free from encumbrances is required by a contract to convey a clear title, a perfect title, a good title, a good and lawful title or a fee simple, or, according to weight of authority, by a contract to convey by a warranty deed or a good and sufficient warranty deed, or a good and perfect or good and sufficient deed, or by deed of general warranty, 'clear, free and unencumbered' or to furnish a certificate showing title to be vested in the seller, or to make title perfect. Such contracts are not satisfied by tender of a warranty deed or a deed containing a covenant against encumbrances, if there is an encumbrance, nor will any indemnity bond take the place of an unencumbered title."

The Mississippi Supreme Court stated in *Jones v. Hickson*, 204 Miss. 373, 37 So.2d 625 (1948):

"[t]he rule appears to be, as it should, in good sense and reason, that [a]n agreement to sell and convey land is in legal effect an agreement to sell a title to the land, and, in the absence of any provision in the contract indicating the character of the title provided for, the law implies an undertaking on the part of the vendor to make and convey a good or marketable title to the purchaser. A contract to sell and convey real estate ordinarily requires a conveyance of the fee simple free and clear of all liens and encumbrances. There is authority that the right of the vendee under an executory contract to a good title is a right given by law rather than one growing out of the agreement of the parties, and that he may insist on having a good title, not because it is stipulated for by the agreement, but on his general right to require it."

This rule of law was reiterated in *Brent v. Corbin*, 252 Miss. 464, 173 So.2d 430, 432 (1965) which held that "a contract to convey merchantable title to land by a general warranty deed implies an obligation to convey a perfect, fee–simple title, unless restricted by other clauses."

In the instant case a "good and valid warranty deed" could not be given to the plaintiff on July 15, 1978, because the defendants failed to cure the title prior to this date. The testimony of Everette Truly was that he instructed the defendants not to make efforts to clear the lien, that is, not to seek affirmative relief from the Internal Revenue Service due to the potential increase in estate tax liability that the sale to Hamilton might cause. This Court finds as a matter of both law and equity the failure to close the transaction on July 15, 1978 is not a valid defense against the plaintiff's action. The estate tax clearance letters were not received until August 15 and August 24, 1978 (Exhibits P–20 and P–21), and therefore, a "good and valid warranty deed" could not be executed by the defendants in favor of the plaintiff until that time. Expounding further on this issue, the Court is of the opinion that the July 15, 1978 closing date of the contract was extended by the defendants' failure to remedy the tax lien. Alternatively, the Court considers the actions of the plaintiff and all the defendants to have constituted a waiver of the closing date provision.

A general principle in equity is that time is not ordinarily regarded as of the essence of contracts unless it is expressly stated or is necessarily implied from the character of the obligation assumed. 71

Am.Jur.2d, *Specific Performance* at § 63. In the instant case, the contract contains two closing dates, June 28 and July 15, and it does not state that time is of the essence. But even if time was of the essence in this case, the failure to remove the estate tax lien and thus cure this title defect would constitute a waiver by the defendants of the closing date provisions. *See Burroughs v. Jones*, 79 Miss. 214, 30 So. 605, 606 (1901). Furthermore, as stated above, the actions of the parties constituted a waiver of the closing date provisions. The three defendants met with Mr. Truly in July to discuss the terms of an indemnity agreement in favor of the plaintiff. The parties intended to protect the plaintiff with additional acreage so the transaction could be closed prior to the receipt of the estate tax clearance letters. Brent Forman testified that he remembered seeing the defendants in Mr. Truly's office sometime "between the middle and latter part of July." The Court is of the opinion that this meeting occurred after July 15, 1978, which in effect constituted a waiver thereof. Also, the Court notes that Howard Bradford's ultimatum extending the deadline to August 4, 1978, was a distinct waiver of the closing date provisions in the contract. However, as stated hereinabove, the defendants were in no position to perform on August 4, 1978.

On their Motion for a Directed Verdict, the defendants argued that the delivery of plaintiff's personal check on August 4, 1978 for the balance of the down payment was not a tender of performance. The Court is of the opinion that this argument is without merit. As previously stated, the defendants were in no position to perform on August 4. Nowhere in the contract is there a requirement that payment be made in cash. In fact, the balance of the purchase price was in the form of three promissory notes to be paid over a period of three years. Furthermore, the plaintiff's check was made out pursuant to the instructions of David Bramlette of the "Forman, Truly" law firm. Therefore, the Court rejects this argument of the defendants.

■ At trial, counsel for the defendants argued that the contract to buy and sell Richland Plantation was not signed by the defendant, William Bradford, thus making the contract null and void under the Mississippi Statute of Frauds, Section 15–3–1, Mississippi Code of 1972. The Court, however, is of the opinion that Helen Anderson and Howard Bradford acted as agents for their brother, William, in the signing of the contract, and that William assented to and ratified both their actions and the terms of the contract.

■ In Mississippi, agency and the scope thereof may be proved through the testimony of the agent alone. The general rule stated in 3 Am.Jur.2d, *Agency*, at § 353 states:

> "Although an alleged agent's extra–judicial statements are not admissible to prove the fact may, when it rests in parol, be established on the trial by the testimony of the agent himself; he is a competent witness to prove the agency, and his testimony cannot be restricted to the mere words used by the principal, but is admissible generally on the whole subject of the existence of the agency and the scope and extent of the authority conferred."

This precise principle was stated by the Mississippi Supreme Court in *Cosmopolitan Ins. Co. v. Capitol Trailer & Body, Inc.*, 244 Miss. 607, 145 So.2d 450 (1962) where the court held:

> "There is, of course, no conflict in the decisions of the Court on the well recognized principle that declarations of an alleged agent off the witness stand cannot be testified to by others to show agency and its scope, *although a witness can testify from the witness stand about his agency just as any other witness.*" *Id.* 145 So.2d at 453 (Emphasis added).

Helen Anderson testified that she advised William of all essential terms of the contract and that he assented to them, that she, Howard and William had decided on the $180,000 price prior to the May 19, 1978

meeting with Jeannette Serio and Charles Barry, and that William was looking forward to Howard and Helen handling the various details of the transaction.

Although William Bradford testified that he did not see the contract until after July 15, 1978, he openly admitted that his sister's testimony was correct concerning his knowledge of the terms and his willingness to conclude the transaction with George Hamilton. Furthermore, William Bradford testified that he participated in the negotiation of the indemnity agreement to protect Hamilton and that he was advised that the estate tax lien would not be a problem as long as they took some action to protect Hamilton in the sale. In addition, the Court notes that the deed of trust (P-13), indemnification and agreement not to encumber (P-10), deed of conveyance (P-12) and a promissory note (P-15), which all were prepared by the "Forman, Truly law firm" all included William Bradford's name.

In the instant situation, William Bradford requests this Court to find the contract void under the Statute of Frauds, although he agreed to and was at all times willing to comply with the terms thereof, until the negotiations with the Brandts. Also, the Court notes that he testified that he would have still sold the property to Hamilton on August 25, had he known the plaintiff's money was in his lawyers' checking account.

This Court is very much aware that the Statute of Frauds requires a contract for the sale of land to be in writing and signed by the person to be charged. Section 15–3–1, Miss.Code of 1972. However, this statute is not without exception. As previously stated hereinabove, Helen Anderson and Howard Bradford acted as agents for their brother, William, in the negotiating and signing of the contract on May 19, 1978. Also, that William assented to and ratified the acts of his brother and sister and the terms of the contract. For this Court to now permit William Bradford to rely on the Statute of Frauds to avoid the conveyance of the property in question would be unconscionable and in violation of the fundamental principles of equity and justice.

73 Am.Jur.2d, *Statute of Frauds*, § 562, notes an exception to the Statute and reads as follows:

"The purpose and intent of the statute of frauds is to prevent fraud, and not to aid in its perpetration, and the courts, particularly courts of equity, will, so far as possible, refuse to allow it to be used as a shield or cloak to protect fraud, or as an instrument whereby to perpetrate a fraud, or as a vehicle or means of culpable wrong, injustice or oppression. On the contrary, the courts will endeavor in every proper way to prevent the use of the statute of frauds as an instrument of fraud or as a shield for a dishonest and unscrupulous person; and under modern theory of practice, what a court of equity would do, law courts, under proper allegations, will no doubt also do. The courts do not tolerate the use of the statute of frauds to enable one to take advantage of his own wrong; and the statute is not designed, and is not to be used as, an asylum of escape from the fundamental principles of justice."

This exception to the Statute of Frauds is further explained in 73 Am.Jur.2d, *Statute of Frauds*, § 565:

"Closely allied to the principles of protection against the assertion of the statute of frauds to accomplish a fraud upon the party who has acted in reliance upon an oral contract or the assertion of the statute as a shield to protect fraud is the doctrine of estoppel to assert the statute. It is universally conceded that the doctrine of equitable estoppel may be invoked to preclude a party to a contract from asserting the unenforceability of a contract by reason of the fact that it is not in writing as required by the statute of frauds."

We recognize that the Mississippi Supreme Court has generally followed the rule that estoppel will not be invoked to effect a conveyance of real estate where the deed, contract or writing is insufficient to meet

the lawful requirements for conveyances of land. *Perrien v. Mapp*, 374 So.2d 794, 796 (Miss.1979); *Perkins v. Kerby*, 308 So.2d 914, 917 (Miss.1975). However, the doctrine of estoppel has on occasion been invoked by the Mississippi Supreme Court to prevent assertion of the statute.

In *Martin v. Franklin*, 245 So.2d 602 (Miss.1971), the defendant and a third party made an oral contract to exchange property. The third party then sold the property to the plaintiffs, who proceeded to build a house thereon with full knowledge of the defendant. After completion, the defendant claimed legal ownership of the property. The Mississippi Supreme Court, specifically noting that the oral exchange of property was void under the statute of frauds, held that under the circumstances the defendant was estopped from asserting his legal title. Also, in *Delta Lumber Co. v. Wall*, 119 Miss. 350, 80 So. 782 (1919) the court dealt with the application of the statute of frauds as it related to the promise of one party to pay the debt of another. The Mississippi Supreme Court reversed the trial court and allowed the estoppel exception to prevent a party from taking advantage of his own wrong.

In *Crowe v. Fotiades*, 224 Miss. 422, 443–444, 80 So.2d 478, 486 (1955) the Supreme Court of Mississippi expressed the essential elements of equitable estoppel as follows:

"[C]onduct and acts, language or silence, amounting to a representation or concealment of material facts, with knowledge or imputed knowledge of such facts, with the intent that representation or silence, or concealment be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence."

These elements have been applied repetitively for many years, but the most recent application was by the United States Court of Appeals for the Fifth Circuit affirming the United States District Court of the Southern District of Mississippi in *Busby v. Daws*, 592 F.2d 1241 (5th Cir. 1979). The Appellate Court held that estoppel could be used to prevent a party from asserting the statute of frauds. The plaintiff participated in a mineral rights and royalty transfer conveying certain interests to the defendant. The instruments were signed by the plaintiff and her husband before an Alabama notary public, and were then recorded in the Chancery Clerk's office in Wayne County, Mississippi. In an action filed in the United States District Court for the Southern District, the plaintiff alleged that she did not in fact sign the document and thus asked the Court to declare the instrument and conveyance null and void. The district court found that Mrs. Busby was aware of the mineral interest transfer and was at all times a participant in the transfer, *but that she in fact did not sign the document.* (Emphasis added). In affirming the district court the Fifth Circuit stated "[i]f the operation of estoppel were denied under the circumstances of this case, Mrs. Busby would be able to disavow a transaction that she surely effected. Such a result would be inequitable to Mr. Daws and his codefendants." *Id.* at 1245.

We find in the instant case circumstances that overwhelmingly estop the defendants from asserting the statute of frauds. As in *Busby*, William Bradford did not in fact sign the contract, however, all the evidence indicates that his sister and his brother were acting as agents for him and that he had agreed to all of the contract terms and the contract price. Furthermore, Everette Truly, the attorney representing the estate, represented to Serio, the plaintiff's agent, that William Bradford had agreed to and was participating in the sale. Serio and Forman were also aware of William Bradford's participation in the indemnity agreement negotiations. Also, Serio and Forman were aware that all of the closing documents included William Bradford's name, including a promissory note made payable to William Bradford.

One question not raised by any of the parties during or subsequent to trial, which

the Court feels necessary to address at this time, is whether H. C. Brandt was an indispensable or necessary party to this action under Rule 19, of the Federal Rules of Civil Procedure. The Court elects to discuss this issue inasmuch as the granting of the equitable relief requested by plaintiff will, in effect, abrogate any possible contractual rights of H. C. Brandt, a nonparty. However, after a close examination of the court file and the evidence admitted at trial, we are of the opinion that it was not necessary to join him as a party or unjust to proceed with this action without his being a party thereto. Furthermore, the parties to this litigation are not deprived of a full adjudication of their rights in the absence of Brandt, and also Brandt will not be denied any right of action that he may desire to pursue because this action will not be res judicata of any action at law he may elect.

The undisputed testimony at trial was that on August 25, 1978, Howard Bradford, William E. Bradford, H. C. Brandt, John Mulhearn, attorney for Mr. Brandt, and Everette Truly, met in Mr. Truly's office to negotiate the sale of Richland Plantation; that H. C. Brandt and his attorney were both aware of the previous contract with George Hamilton; and that the Hamilton contract was discussed on August 25, 1978, by the parties when negotiating the Brandt contract. (Brandt Contract Exhibit P–23). The Court specifically notes that on August 30, 1978, plaintiff filed a Writ of Attachment against the defendants' property, described herein, which was executed and levied on by the United States Marshal on August 31, 1978. The attachment of this property constituted a lien by the plaintiff on the defendants' property which by law is notice to all prospective purchasers. The Court is also aware that no motion for intervention was ever noticed and filed by Mr. Brandt in this litigation; and considering all of these circumstances, the Court is of the opinion that H. C. Brandt was not a necessary or indispensable party and that there was no error in failing to join him under Rule 19 of the Federal Rules of Civil Procedure. *See, Provident Tradesmen's Bank & Trust Co., v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968); *Reese v. Skelly Oil Company,* 53 F.R.D. 548 (S.D.Miss.1971).

The Court hereby concludes that the May 19, 1978 contract between the plaintiff and the defendants is valid, and that the August 25, 1978 contract between the defendants and H. C. Brandt is null and void. Furthermore, the plaintiff has been ready, willing and able to perform his contract to purchase the Richland Plantation since on or before June 28, 1978. Finding no adequate remedy at law, we therefore hold that the plaintiff is entitled to specific performance, namely, the immediate execution of the May 19, 1978 contract. The plaintiff is also entitled to an award of an appropriate attorney's fee along with court costs. The amount of this fee will be determined by the Court upon the submission of evidence and affidavits by counsel for plaintiff within five (5) days from the receipt of this Opinion, with copies mailed simultaneously to counsel for the defendants. Counsel for the defendants will have five (5) days to respond thereto.

A Judgment, incorporating the findings and conclusions of this Memorandum Opinion, should be presented to the Court, approved as to form by counsel for all parties within the time and in the manner prescribed by the Local Rules.

**834**

## CHARLES L. BARRY & ASSOCIATES

Contract To Buy And Sell

THIS CONTRACT AND AGREEMENT made and entered into on this day

by and between  Howard Bradford  _et al_ ,

herein referred to as Seller, and George Stephen Hamilton

_____, herein referred to as Buyer, DOTH WITNESS:

Seller hereby covenants and agrees to sell to the Buyer, and Buyer hereby covenants and agrees to purchase from the Seller under the terms and conditions herein set out, the following described property, to-wit:

THE RICHLAND PLANTATION HOME and 295 acres of land. The land is around the home and lies South of Miss. Highway 553 being the Church Hill-Fayette Road. All being in Jefferson County ,Mississippi.

The purchase price shall be the sum of One hundred ninety thousand eight hundred and no/100 _____ DOLLARS ( $190,800.00 ).

The Buyer has this day deposited with CHARLES L. BARRY, REAL ESTATE BROKER, the sum of One thousand and no/100

DOLLARS ($1,000.00 ) as a deposit and earnest money in the premises. The Seller agrees to deliver to the Buyer a good and valid warranty deed conveying the property aforesaid when the balance has been paid or tendered. Should the title be satisfactory and acceptable to the attorney for the Buyer and the Buyer shall fail or refuse for any reason to pay the balance of the purchase price, then the deposit and earnest money herein referred to shall be forfeited to the Seller, and shall be complete and liquidated damages for the failure of the Buyer to purchase in the premises. The earnest money applies on purchase price. Any conveyance and warranty deed in the premises shall be without reservation or exception except as to Sellers will deed 1/16 ~~percent~~ of minerals owned by sellers to buyer. .

SPECIAL AGREEMENTS by the parties relating to the subject matter:

The $1,000.00 George Hamilton check # 524 is hereby given to seller upon signing this contaract. Buyer will have priviledge of personal inspection until midnight May 29,1978. If this inspection is not made by then an additional $4000.00 will be given to seller on May 30,1978, by Realtor Jeannette Serio (for the buyer) at the Offices of Charles L. Barry & Associates in Matches,Miss. This will then hold the property for said buyer until June 28,1978. If a sales has not been completed by June 28,1978 then the $5000.00 will be forfeited to seller. The 35,000.00 applies on the $190,800.00 sales price.

At the closing and passing of the deed an additional $50,332.00 will be paid. This makes a total of $55,332.00 down payment, being 29% of total. The balance of $135,478.00 will be paid at 7 3/4 % interest over a period of five years.

Buyer accepts home "As is." Buyer will take immune with to Cover unpaid balance

CONTINGENCIES: THIS CONTRACT IS CONTINGENT UPON THE FOLLOWING:

Ad valorem taxes are to be prorated as of date of deed passing.

Unless the matters contemplated by this contract and agreement
shall have been fully consummated by the payment of the consideration
and the delivery of the conveyance as herein set out before 12:00
o'clock noon___July 15___1978 then the rights and obligations of
all parties hereto shall cease and be of no further force and effect.

SELLER will pay normal real estate commission. *6% = $10,800.00*

REQUIREMENTS of lending institution regarding termite certification
is Sellers responsibility.

WITNESS the signatures of the parties:

Buyer - Date - 5/19/78

Seller - Date - 5/19/78

Buyer - Date -

Seller - Date - 5/19/78

We have this day accepted the earnest money as shown and agreed to the terms
and conditions of this contract and agreement.

CHARLES L. BARRY & ASSOCIATES, REALTORS

Date - 5/19/78

GEORGE HAMILTON
9595 WILSHIRE BLVD., STE. 410
BEVERLY HILLS, CALIF. 90212

524

Apr 26, 1978
16-2903
1222

PAY TO THE
ORDER OF   C.L. Barry Trust                   $ 1,000.00

One thousand dollars no _____ DOLLARS

IMPERIAL BANK
1630 WILSHIRE BLVD
LOS ANGELES, CALIFORNIA 90025

1:1222-2903: 05-416 191

## SUPPLEMENTAL MEMORANDUM OPINION

On May 9, 1980, this Court entered its Memorandum Opinion in the above styled diversity case, finding that the plaintiff was entitled to specific performance of the contract in issue, as well as an award of appropriate attorneys' fees and court costs, to be determined by the court upon submission of evidence and affidavits by counsel for the plaintiff with the defendants to have the opportunity to file a response.

After having considered the affidavits of the plaintiff's counsel, as well as their brief in support thereof and the response and affidavits filed by the defendants' counsel, we will award attorneys' fees and state the basis therefor.

■ This Court is aware that in the absence of a statute or a contract provision, attorneys' fees are not recoverable as damages unless the infliction of punitive damages is justified in the case. *Aetna Casualty & Surety Co. v. Steele*, 373 So.2d 797, 801 (Miss.1979); *Carl v. Kraft*, 258 So.2d 237, 240 (Miss.1972); and *Cooper v. United States Fidelity & Guaranty Co., et al.*, 186 Miss. 116, 188 So. 6 (1939). In Mississippi, punitive damages are not recoverable in a breach of contract action unless such breach is attended by intentional wrong, insult, abuse, or such gross negligence that amounts to an independent tort. *Aetna Casualty & Surety Co. v. Steele*, 373 So.2d 797, 801 (Miss.1979); *New Hampshire Insurance Co. v. Smith*, 357 So.2d 119 (Miss. 1978); and *Progressive Casualty Insurance Co. v. Keys*, 317 So.2d 396 (Miss.1975). However, because of the following reasons, many of which have already been stated in the May 9, 1980 Memorandum Opinion, the Court was and is of the opinion that the defendants' actions in breaching the contract justify the award of attorneys' fees by this Court under Mississippi law.

During the trial, Charles Barry and Jeannette Serio testified that they questioned Howard Bradford and Helen Anderson on May 19, 1978, concerning their brother's ownership in the estate. Serio and Barry both testified that the defendants told them that their brother, William, had no ownership in the home or the acreage that was to be sold to the plaintiff. Furthermore, Brent Forman and Everette Truly, law partners who respectively represented the plaintiff and the defendants in the real estate transaction, testified that Serio and Barry acted very surprised when they were told in June that William Bradford did in fact own an interest in the estate that was going to be sold to the plaintiff. As the trier of fact, this Court found that there was no credible evidence that refuted the statement of these witnesses. (At Page 825).

Despite the fact that throughout this controversy William Bradford maintained that he never authorized his brother or sister to act on his behalf as agents in this real estate transaction, there was testimony from Jeannette Serio and Brent Forman that Mr. Truly, the lawyer upon whose advice the defendants base their good faith argument, informed them sometime in the first or second week of June that William Bradford had agreed to the sale. (At Page 826).

Furthermore, there was evidence admitted at trial that William Bradford, along with his brother and sister, met with Mr. Truly in early July of 1978 to discuss an indemnity agreement to protect Hamilton so that the real estate transaction could be closed despite the non–receipt of the anticipated estate tax clearance letters. This evidence is totally contrary to the entire defense of William Bradford that he had not consented to his brother and sister acting as agents for him in the real estate transaction.

During the trial, Howard Bradford testified that he had a telephone conversation with the plaintiff on August 2, 1978, in Charles Barry's office, during which he told the plaintiff that the estate tax lien had been cleared and that the defendants wanted their money immediately. The plaintiff responded by telling Mr. Bradford that he would give his check to Jeannette Serio for delivery. Howard Bradford then told the plaintiff that the property was still his if

the money was delivered by August 4, 1978. At the time of this telephone conversation, the tax lien had not been removed from the estate. (At Page 827). The Court also notes that Howard Bradford testified that during this telephone conversation with the plaintiff on August 2, 1978, he told the plaintiff that he could get more money for the property than the plaintiff had contracted for and as the evidence indicated at trial, the defendants contracted with a Mr. Brandt on August 25 for $10,000 more than the contract price agreed upon with the plaintiff.

The testimony at trial further indicated that the defendants received the estate tax clearance letters on August 15 and 24, 1978, and subsequently, on August 25, 1978, negotiated the sale of Richland Plantation to H. C. Brandt. Everette Truly also acted as the closing attorney at this sale. (At Page 827).

The defendants argued that they acted in reliance upon the advice of their attorney, Mr. Truly, which constituted good faith. However, the Court found the following conflict between the testimony of the defendants and their attorney upon whom they purportedly relied, as set forth on Pages 827 and 828:

> The George Hamilton check cleared the firm's account on August 22, 1978, and Truly testified that he was aware of its clearance and that he had informed the defendants of this prior to the signing of the contract with Brandt on August 25, 1978. However, Howard Bradford testified that he did not know the money was in Truly's account, and furthermore, that he was not instructed that Hamilton had executed all of the documents. Howard Bradford further testified that if he had known the money was in Truly's account, he nevertheless would have sold the property to the plaintiff. William Bradford also testified that if he had known that the $53,322 was in Mr. Truly's bank he would have sold the property to the plaintiff. Mrs. Anderson, however, testified that she thought Howard had told her that Hamilton's money was in Truly's

bank prior to the signing of the Brandt contract on August 25, 1978.

We find a lack of good faith on the part of the defendant Howard Bradford, who testified at trial that he returned the plaintiff's $4,000 deposit upon the advice of his attorney, and that he kept the plaintiff's $1,000 deposit, at which time he proudly opened his wallet and displayed it to the Court during this trial.

The defendants' argument of good faith reliance upon the advice of counsel is misplaced. The Mississippi Supreme Court held in *Woodall v. Ross*, 317 So.2d 892, 896 (Miss.1975) that:

> Exemplary damages are not recoverable against the defendant who acts in good faith under the advice of counsel. But such damages are recoverable against him if he is actually in the wrong, although believing otherwise, and if, under advice of counsel, he acts in an oppressive or cruel manner.

Despite the conflicts between the defendants' testimony and that of their attorney, Mr. Truly, and even if they did act in reliance upon his advice, the actions of the defendants are still oppressive in that they involve the wilful and intentional breach of their contract with Hamilton. The advice that Mr. Forman gave which was clearly contrary to that of Mr. Truly, is also arguably advice of the defendants' counsel since Mr. Truly and Mr. Forman are and were at that time law partners. Whatever claims, if any, the defendants might have against their attorneys will not prohibit this Court from awarding attorneys' fees against the defendants in this cause. We feel that the actions of the defendants in breaching their contract with the plaintiff, George Hamilton, were clearly wilful and in total disregard to the rights of the plaintiff and were motivated by their opportunity to obtain more money for the property than that contracted for with the plaintiff.

In determining the amount of attorneys' fees to be awarded to plaintiff's counsel, the Court has reviewed the affidavits submitted by the plaintiff's attorneys

in which they requested an award of $23,-788. Although this case involves some difficult legal questions, we are of the opinion that it was a relatively uncomplicated case involving only a few witnesses, few court appearances, and only one and one half days of trial. The Court further notes that there was very little discovery required in preparation of this case and that only a few depositions were taken. The Court also believes that much of the time consumed by plaintiff's counsel in this action constituted a duplication of effort resulting from a change of law firms, and, to a lesser degree, the plaintiff's unavailability to his attorneys. Therefore, in our opinion and judgment, the $23,788 requested by plaintiff is excessive, and this Court will award a more appropriate fee of $10,000 to cover both fees and costs.

A Judgment incorporating the findings of fact and conclusions of law discussed in both the Memorandum Opinion and the Supplemental Memorandum Opinion should be submitted to the Court, approved as to form by counsel for both parties, in the time and in the manner prescribed by the local rules.