355 So.2d 657 (1978)
Ernest G. THOMAS
v.
Betty M. PREWITT et al.
No. 49863.
Supreme Court of Mississippi.
February 15, 1978.
*658 Ellis, Ellis & Bost, William M. Bost, Jr., Vicksburg, for appellant.
James W. Newman III, Jackson, for appellees.
Before PATTERSON, C.J., BROOM and BOWLING, JJ., and IDOM, Commissioner.
O. GUYTON IDOM, Commissioner for the Court:[1]
Complainants, Betty M. Prewitt and Norma Ruth Kellum, brought an action for specific performance for an alleged contract to sell securities in the Chancery Court of Warren County, Mississippi, against defendant, Ernest G. Thomas. Defendant, by way of answer, specifically denied that he entered into an agreement to sell his stock in the corporation and, in his amendment answer, affirmatively pleaded that the alleged *659 contract between defendant and complainants was void and unenforceable by virtue of Mississippi Code Annotated, Section 75-8-319 (1972) [Investment Securities Statute of Frauds section].
A special stockholders meeting of Belmont Realty, Inc., a small Mississippi corporation with real property holdings in Vicksburg, was held on August 18, 1975. The meeting was called for the purpose of discussing a proposal to sell all of the stockholders' stock (1200 shares) in the corporation. Financial woes had plagued this corporation from its inception and, for that reason, the stockholders were eager to rid themselves of the financial burden that became associated with the corporation. Seven (7) of the twelve (12) stockholders, including Ernest G. Thomas, hereinafter referred to as "Seller", attended the meeting.
At this meeting, John Prewitt, the corporation's attorney and himself a stockholder, informed those present that Betty M. Prewitt and Norma Ruth Kellum, hereinafter referred to as "Buyers", were interested in purchasing all the stock of the corporation, assuming an acceptable agreement could be reached. After much discussion regarding what would constitute acceptable terms for the proposed sale, an apparent understanding was reached. The stockholders made an offer to sell their stock to the buyers, based upon that prior understanding. Several days later and prior to any revocation of the offer, buyers notified the stockholders of their acceptance of the offer. All of the stockholders except defendant seller, transferred their stock to buyers in accordance with the agreement. Seller refused to do so because he maintained that there was no "meeting of the minds" between himself and buyers, in that his offer to sell was contingent upon buyers agreeing to sell to him certain real property which belonged to the corporation.
This action for specific performance was commenced after extensive correspondence between seller and buyers failed to resolve the dispute. At trial, buyers called witnesses to show that the agreement in question was absolute and not subject to any contingency. Seller testified that he agreed to sell the stock upon the condition that buyers agreed to sell to him a certain piece of real property. The only writing evidencing the existence of the alleged contract to sell stock is the minutes of the special stockholders' meeting.
The chancellor in his findings of fact and conclusions of law held that the contract was not within the statute of frauds because "... it was a complete contract made by the corporation in which these two ladies bought the entire stock and the entire property of the corporation." Furthermore, the chancellor held that even if the statute of frauds did apply, that seller was "equitably estopped" from relying on the statute.
The first question presented is whether the agreement in the case at bar was within the purview of the statute of frauds [Miss. Code Ann. Sec. 75-8-319 (1972)]. This statute provides:
A contract for the sale of securities is not enforceable by way of action or defense unless
(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or
(b) delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; or
(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten (10) days after its receipt; or
(d) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price.
*660 We are of the opinion the Investment Securities Statute of Frauds by its terms is applicable to this transaction.
The question remains, however, whether the provisions of the Investment Securities Statute of Frauds were satisfied in the instant case. Four elements are required to satisfy this statute:
(1) A writing;
(2) Signed by the party to be charged, or his agent or broker, providing for the sale of;
(3) A stated quantity of described securities; and
(4) At a defined or stated price.
See Tripp v. Pay 'N Pak Stores, Inc., 268 Or. 1, 518 P.2d 1298 (1974).
The only writing which evidences the contract in the instant case is the minutes of the special stockholders' meeting, prepared by the corporation's attorney, John Prewitt, and signed by the president, Jerry Derivaux and secretary, Gene Calhoun, of the corporation. These minutes were prepared a week to ten (10) days subsequent to the stockholders' meeting and include, inter alia, (1) the offer to sell made by the stockholders and, (2) the purported acceptance of the offer by the buyers. It should be noted that the actual acceptance by the buyers did not occur until two days after the meeting.
Buyers contend that the corporate minutes satisfy paragraph (a) of the statute of frauds. With this we do not agree. The minutes of the meeting were not signed by appellant, nor were they signed by an authorized agent or broker of the seller. In Konsuvo v. Netzke, 91 N.J. Super. 353, 220 A.2d 424 (1966), one Peter Konsuvo brought an action for specific performance of an alleged contract to sell stock. The parties stipulated that the contract came within the Investment Securities Statute of Frauds Cprovision. The only writing evidencing the contract was the corporate minutes, signed by the secretary of the corporation, and taken at the meeting where the alleged agreement was reached. Konsuvo contended that the minutes constituted all the essentials of a valid contract, and, as a result, the statute of frauds was satisfied; that the secretary of the corporation was an agent of the defendant stockholders for the purpose of reducing the agreement to writing. The Court held that no agency relationship was created, citing as authority Section 15 of Restatement of Law, Agency, page 50 (1933), which provides:
An agency relationship exists only if there is a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent so to act.
Before the secretary or president of a corporation can be classified as a stockholder's agent when signing the minutes of a special stockholders' meeting, there must first be a showing that he signed the minutes as the duly authorized agent of the stockholders, and not merely as an agent of the corporation. Asbury v. Mauney, 173 N.C. 454, 92 S.E. 267 (1917).
In 5 Fletcher Cyc Corp, § 2206 (Perm.Ed. 1976), it states:
The corporate records are not sufficient, however, to satisfy the statute as against a stockholder who did not sign them or where they do not show any understanding or agreement but merely show circumstances from which some kind of an understanding might be inferred.
Assuming arguendo that the facts in the instant case give rise to an implied authorized agency, even so, this agency would be limited solely to taking down what transpired at the meeting. In other words, events which occurred subsequent to the meeting could not be included in the minutes of the meeting. As stated earlier, the acceptance of the offer occurred subsequent to the meeting. That being so, it cannot be considered as a part of the writing. Hence, the writing would not be sufficient evidence of the existence of a contract between these parties.
The question remains whether any of the statutory exceptions to the Investment Securities Statute of Frauds section are applicable. *661 Of the three statutory exceptions, two are clearly inapplicable on the facts of this case.
Buyers contend that the judicial admission exception in paragraph (d) applies, arguing that the seller judicially admitted the existence of the contract; that, as a consequence of such admission, the contract is taken out from under the application of the statute. The requirements for a judicial admission are:
... that the declaration relied upon was made during the course of a judicial proceeding, (2) that the statement is contrary to an essential fact embraced in the theory of recovery or defense asserted by the person giving the testimony, (3) that the statement was deliberate, clear and unequivocal, (4) that giving of conclusive effect to the declaration will be consistent with public policy, and (5) the testimony must be such as relates to a fact upon which a judgment for the opposing party may be based. Griffin v. Superior Insurance Company, 161 Tex. 195, 338 S.W.2d 415 (1960).
In the instant case, seller admitted that an agreement was reached, but added that the agreement was conditional. We hold that there was no judicial admission in either the pleadings, testimony, or otherwise, that a contract was made for the sale of a stated quantity of described securities. Furthermore, it does not appear that the evidence meets the third requirement as set out in Griffin v. Superior Insurance Company, supra, that is, that the "statement was deliberate, clear and unequivocal."
The final question before the Court is whether the doctrine of "equitable estoppel" may be used to take the contract out from under the statute of frauds.
Non-statutory exceptions to the writing requirement of statutes of fraud are not looked upon with favor in this state. Delta Lumber Co. v. Wall, 119 Miss. 350, 80 So. 782 (1919) is the only case we have found where this Court has recognized "estoppel" as an exception to the writing requirement of the statute of frauds provision. We find that the Wall case has no application to the instant case because of factual dissimilarities. The reluctance of this Court in approving or recognizing non-statutory exceptions to the writing requirement of the statute of frauds provision stems from the fear of eroding the solid foundation upon which the statute is based. In Tanner v. Walsh, 184 Miss. 147, 183 So. 278 (1938), a pre-code case, we stated:
(2) What we are, in effect, asked by the appellant to do is to engraft an exception on the statute by interpreting it as if it contained, after the words, "for a longer term than one year," the following or similar words: "unless the lessor, when making the lease, promises the lessee to observe it without its being reduced to writing, and permits the lessee to expend money on the leased premises in reliance on such promise." This we cannot do, for this Court, contrary to the course pursued by some others, has uniformly held that it is without power to engraft exceptions on the statute, and must enforce it as written. Among the many cases so holding see Beamon v. Buck, 9 Smedes & M. 207; Box et al. v. Stanford, 13 Smedes & M. 93, 51 Am.Dec. 142; Howie v. Swaggard, 142 Miss. 409, 107 So. 556. Cf. Delta Lumber Co. v. Wall, 119 Miss. 350, 80 So. 782. To hold otherwise would destroy the purpose of the statute to prevent frauds and perjuries.
Since the decision of this Court in Tanner, the legislature of this state has adopted the Uniform Commercial Code. Under Mississippi Code Annotated, Section 75-1-103 (1972), it provides:
Unless displaced by the particular provisions of the code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions. (Emphasis added).
Furthermore, under Mississippi Code Annotated, Section 75-1-203 (1972), it provides: *662 "Every contract or duty within this code imposes an obligation of good faith in its performance or enforcement." The question remains whether the foregoing provisions require that we recognize "estoppel" as a non-statutory exception to the Investment Securities Statute of Frauds section. We hold that they do not. In Cox v. Cox, 292 Ala. 106, 289 So. 609 (1974), the following pertinent commentary is made:
(4) The only question remaining is whether appellee's contention that the oral agreements are enforceable because the appellants were guilty of fraud or they are equitably estopped to raise the defense of the Statute of Frauds is meritorious. We find no merit in this contention. It is well settled in Alabama that "an executory agreement which is void under the statute of frauds cannot be made effectual by estoppel merely because it has been acted on by the promisee, and has not been performed by the promisor." Hurst v. Thomas, 265 Ala. 398, 91 So.2d 692 (1956). To admit the doctrine advanced by the appellee, that the defendants were estopped to raise the Statute of Frauds unless one of the exceptions was applicable, would be to utterly destroy the statute.
We recognize that the Statute of Frauds contained in the Uniform Commercial Code is probably more liberal than the statute dealing with contracts for the sale of land. Title 20, Section 3, Code of Alabama 1940 (Recompiled 1958). However, if the party seeking the enforcement of an oral contract cannot show he comes within one of the exceptions, we think the law set out in Hurst applies with equal force to transactions under the Uniform Commercial Code.
The decision of the Alabama Supreme Court is persuasive. We adopt the reasoning therein.
The decision is reversed and judgment entered here dismissing the bill of complaint.
REVERSED AND JUDGMENT HERE FOR APPELLANT.
PATTERSON, C.J., INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.
NOTES
[1] pursuant to Chapter 430, Laws of 1976. The above opinion is adopted as the opinion of the Court.