**Gary FUTCH and Futchlock Industries, Inc., Plaintiffs,**

v.

**JAMES RIVER–NORWALK, INC., Defendant.**

Civ. A. E87–0088(L).

United States District Court, S.D. Mississippi, E.D.

Feb. 23, 1989.

Henry Palmer, Meridian, Miss., for plaintiffs.

Winston Cameron, Deen, Cameron, Prichard, Young, Kittrell & Loeb, Meridian, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on motion of the defendant James River–Norwalk, Inc. (James River) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The individual plaintiff Gary Futch and the corporate plaintiff Futchlock Industries, Inc. instituted this action against James River seeking damages for breach of an oral contract.[1]

James River denies the existence of any contract but asserts that Mississippi's statutes of frauds would nevertheless render any such oral contract between the parties unenforceable. Plaintiffs have filed a timely response to the motion, and the court has considered the memoranda of authorities together with attachments submitted by the parties.

From January 1982 through December 1984, Futch was employed in the forestry industry as a fiber supply superintendent by a paper mill in Alabama. Prior to that time, while working in a similar wood procurement capacity for another Alabama paper mill, Futch met and became friends with a co-worker, Gerald Clark. During that time Futch and Clark generally discussed Futch's interest in becoming an independent wood dealer.

In early 1984, Clark became employed with James River as its manager in charge of wood supply. In the latter months of 1984, Clark contacted Futch regarding Futch's interest in becoming a wood dealer with access to receiving orders from James River. Futch expressed a desire to talk further so Clark arranged a meeting of himself, Futch and Rex Germany, James River's district supervisor of wood procurement. No writing of any nature resulted from that meeting. Futch claims, however, that at the meeting he entered into an oral contract with James River pursuant to which Futch would

(a) organize, coordinate, finance, insure and assist the small wood producers that supplied wood to James River;

(b) be responsible for the total financing of his operation;

(c) receive one-half of the mill's requirements which would be issued on a weekly basis;

(d) be established as a wood dealer and consistently provide James River's wood requirements within six months;

(e) be assisted by James River's field personnel during the first six months of his operation;

(f) be free and encouraged to establish dealer-producer relations with all but

---

1. References to Futch may be to Futch individually or to both plaintiffs collectively.

four specified direct contractors or producers;

(g) be paid on a weekly basis at a set rate;

(h) negotiate for anticipated future increase requirements and be given consideration based on his performance, compliance with the original agreement and his desire and ability to meet future needs; such future needs would be divided between "the direct contractors and/or [Futch]."

Further, according to Futch, the agreement was to begin on or before January 1, 1985.[2]

On November 13, 1984, a certificate of operation was issued by the State of Mississippi to Bigbee Wood, Inc., which is now operating as Futchlock Industries, Inc. The articles of incorporation, executed by Futch as an incorporator on November 5, 1984, listed Futch as a director.[3] In December 1984, plaintiffs first received a single unit wood order from James River and continued to receive orders on a weekly basis through August 1986, at which time James River stopped submitting such orders.[4]

James River bases its motion for summary judgment on its contention that the applicable Mississippi statutes of frauds, Miss.Code Ann. § 75–2–201 and § 15–3–1 (1972), bar enforcement of the alleged oral agreement between the parties. The court must first determine whether these statutes apply to the facts presented. Section 75–2–107 of the Mississippi Code speaks directly to the applicability of Mississippi's sales article to cases involving the sale of timber:

A contract for the sale apart from the land ... of timber to be cut is a contract

for the sale of goods within this chapter....

The Mississippi Supreme Court has recognized that this section includes "[t]imber, whether cut or to be cut." *Bay Springs Forest Products v. Wade,* 435 So.2d 690, 694 (Miss.1983). Thus if the alleged contract was one for the sale of timber, it would be subject to section 75–2–201. Plaintiffs contend, though, that under the contract at issue, Futch was to act as a wood broker for James River and that therefore, the contract is enforceable despite the absence of a writing evidencing the parties' agreement as would otherwise be required by section 75–2–201. This is because under Mississippi law, a brokerage contract is not subject to the writing requirement of any statute of frauds. *Jefcoat v. Singer Housing Co.,* 619 F.2d 539, 543 (5th Cir.1980) (citing *Minter v. Hart,* 208 So.2d 169, 170 (Miss.1968); *Hill v. Capps,* 248 Miss. 601, 160 So.2d 186, 190 (1964)).

Plaintiffs' argument in this regard apparently derives from the deposition testimony of Morris B. Seymour, Director of Fiber Supply for James River, and of Rex Germany, both of whom, in the course of describing the functions of a wood dealer, characterized a "wood dealer" as "a broker of wood." Seymour explained that a "wood producer," also called a "direct contractor," actually owns and operates a logging operation. A wood dealer, on the other hand, typically finances or assists wood producers with financing, locating timber and marketing the wood produced. That is, the dealer, or "broker," purchases timber from wood producers and sells it in various markets, *i.e.,* to manufacturers of paper products, furniture, etc. such as James River.

---

**2.** These terms, as alleged by Futch, are set forth in his affidavit in opposition to defendant's motion.

**3.** The parties dispute whether this corporation was created prior to or after the meeting of Clark, Futch and Germany and it is unclear when that meeting took place. This is not a dispute as to a "material" fact so as to preclude summary judgment.

**4.** James River charges in its answer to plaintiffs' amended complaint that, beginning about December 1984, plaintiffs' deliveries pursuant to the weekly orders became unsatisfactory and that plaintiffs were notified around May 1986 that James River would have to stop placing orders. In their answer to affirmative matters, plaintiffs deny that their deliveries were unsatisfactory but do not deny that notice of termination of such orders was given. Though in dispute, the facts regarding the adequacy of plaintiffs' performance are not material to the resolution of this action.

■ From the descriptions given by Germany and Seymour, it is apparent that while a wood dealer may be referred to as a "broker" of wood, his function is not that of a broker in the usual sense of that term. A "broker is essentially a middleman who, without interest in the property to be sold, locates buyers for sellers—or vice versa—for a commission." 12 Am.Jur.2d *Brokers*, § 1 (1964 & Supp.1988). In contrast, a wood dealer like Futch actually acquires an interest in the property, the timber, by contracts with wood producers or by deed, and from there arranges for the cutting, sale and delivery of wood to the various markets described. He makes purchases for the purpose of resale and is not a mere middleman. Thus, the alleged contract cannot appropriately be characterized as a brokerage contract so as to eliminate the need for written evidence of the agreement.

■ Plaintiffs next claim that the UCC statute of frauds is inapplicable since the contract was not merely one for the sale of goods but rather was one primarily for plaintiffs' services. Specifically, plaintiffs assert that although the sale of timber was contemplated by the contract, that was not what motivated James River to establish Futch as a wood dealer. Rather, James River desired to continue purchasing wood from small producers but did not want to furnish them with liability or worker's compensation insurance. At the same time, it wished to insulate itself from liability. Therefore, according to plaintiffs, James River contracted to establish Futch as a wood dealer primarily so that he would be responsible to provide insurance to producers and thereby protect James River from exposure to liability in exchange for payment of a commission.

In cases involving sales of both goods and services, the dominant feature of the agreement controls in determining whether the UCC rules apply. *Anderson Construction Co. v. Lyon Metal Products*, 370 So.2d 935, 938 (Miss.1979). Applying that

test to the facts here presented, it appears that while James River may have been motivated by and received the additional benefit of insulation from liability by virtue of an arrangement with Futch, nevertheless, if an agreement was made, it was one for the sale of timber. The terms cited by Futch himself reveal that to be the case.[5] No mention is made in those terms of payment by commission. Instead, payment, according to Futch, was to be at a "set rate." Furthermore, the amended complaint characterizes the alleged agreement as one "whereby plaintiffs would supply defendant with wood." In sum, the main subject of and the ultimate result under this alleged contract would be the sale of a quantity of timber as ordered by James River from Futch on a weekly basis. Therefore, the court finds that the alleged contract was one for the sale of timber to be governed by the Mississippi UCC Article 2—Sales.[6]

The UCC statute of frauds provision bars enforcement of any oral contract for the sale of goods greater than $500 unless a writing exists which sufficiently indicates a contract and which is signed by the party against whom enforcement is sought. Miss.Code Ann. § 75-2-201(1)(1972). Plaintiffs admit that the alleged agreement sued upon was oral and do not allege the existence of any writing as required for enforcement under section 75-2-201(1). Therefore, the court's next inquiry is whether any exception to the statute of frauds may apply here.

■ Section 75-2-201(3) provides that a contract which does not satisfy the writing requirement but which is otherwise valid is enforceable

(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provi-

---

5. *See supra* page 2.

6. Since the court finds that Mississippi's Uniform Commercial Code applies, consideration

of the applicability of the general statute of frauds, Miss.Code Ann. § 15-3-1 (1972), is not necessary.

sion beyond the quantity of goods admitted; or

(d) with respect to goods for which payment has been made and accepted or which have been received and accepted.[7]

James River denies in all pleadings the existence of any oral contract with the plaintiffs. Plaintiffs urge though that James River has admitted to the existence of a contract through deposition testimony of Rex Germany and by part performance of the contract. While deposition testimony has been accepted as evidence as a judicial admission,[8] the testimony presented by plaintiffs does not reveal any such admission. Germany testified that he, Futch and Clark met "to talk of the possibilities" and "nothing was guaranteed."[9] Nowhere in the submitted testimony did Germany admit that a contract or other agreement was entered into by the parties. No other evidence of an admission is presented to the court.[10] Thus, the admission exception cannot be used to invalidate the bar of the statute of frauds.

James River admits that from December 1984 through August 1986 it submitted to Futch single unit wood orders on a weekly basis. Both parties agree that all of those orders have been delivered and paid for and that no outstanding debt or obligation exists as to those orders in particular. Plaintiffs contend, however, that the admitted weekly orders were acknowledgements of the oral agreement and that performance has been completed, thus removing the necessity of a writing.[11] The language of section 75-2-201(3)(c) speaks directly to this issue, clearly stating that an otherwise invalid contract can be enforced as to the goods paid for and accepted. Since James River does not deny submitting orders to Futch from December 1984 through August 1986 and Futch does not deny that he has received payment for such orders, the part performance exception offers plaintiffs no relief. If either exception (b) or (c) would operate to enforce any contract between these parties, the uncontested facts would require enforcement only to the extent of those single unit weekly orders to which both parties have admittedly fulfilled their obligations. *See Babst v. FMC Corp.*, 661 F.Supp. 82, 88–89 (S.D.Miss.1986); *Global Truck and Equipment Co. v. Palmer Machine Works*, 628 F.Supp. 641, 647–48 (N.D.Miss.1986).

The final inquiry the court must make is whether, as plaintiffs contend, James River is estopped to assert the statute of frauds as a bar to enforcement of the alleged oral contract. Plaintiffs do allege the elements of promissory estoppel in paragraph four of the amended complaint.[12] An issue arises, therefore as to

7. Both parties agree that Miss.Code Ann. § 75-2-201(3)(a), the exception for "specially manufactured" products, is inapplicable.

8. *See Babst v. FMC Corp.*, 661 F.Supp. 82, 86 (S.D.Miss.1986).

9. There is a question as to whether at the time of the alleged agreement Germany did, in fact, have authority to make any contract on behalf of James River. Also, the court notes that there may be a further question as to whether he had authority to make an admission binding on James River at the time of his testimony. However, these factual questions are not issues of concern since the facts reveal that no contract was admitted by Germany.

10. Futch also submitted his own deposition testimony as evidence of an admission; however, Futch testified only as to the making of the alleged contract, not as to any admission of the existence of a contract, and this testimony cannot constitute an admission by James River.

11. Futch refers the court to two Mississippi cases in support of this position: *Shogyo Int'l Corp. v. First Nat'l Bank of Clarksdale*, 475 So.2d 425 (Miss.1985), and *Beane v. Bowden*, 399 So.2d 1358 (Miss.1981). Each involved an analysis of Mississippi's general statute of frauds (section 15-3-1), not the UCC statute, and thus concerned facts not related to sales of goods which is the situation in the instant case.

12. Plaintiffs' paragraph four reads:

On or about December of 1984, after negotiating with representatives of James River–Norwalk, Inc., plaintiffs and defendant entered into an oral contract whereby plaintiffs would supply defendant with wood for its paper manufacturing operation. This contractual obligation was entered into in good faith on behalf of plaintiffs; and plaintiffs, relying on the promises, assertions and statements of the defendant, expended time, money and effort toward fulfilling plaintiffs' obligation under said agreement.

whether plaintiffs may rely on this theory to obviate the requirement of a writing. The court notes that a conflict apparently exists with regard to the analysis and utilization of estoppel as an exception to Mississippi's statutes of frauds. In 1984, the Fifth Circuit decided *Walker v. U-Haul Co. of Mississippi*, 734 F.2d 1068, 1078 (5th Cir.1984), which held that "the Mississippi statute of frauds does not bar an action for damages incurred in reliance on an oral promise that is itself unenforceable." In that opinion, the court distinguished *Thomas v. Prewitt*, 355 So.2d 657 (Miss.1978), wherein the Mississippi Supreme Court held that estoppel is not an exception to the writing requirement of Mississippi's UCC statutes of frauds. The Fifth Circuit stated that the distinction was one of recovery sought: In cases such as *Thomas*, where specific performance is sought, estoppel is not an exception; but in cases such as *Walker*, where the plaintiff seeks damages, estoppel is an exception. *Walker*, 734 F.2d at 1078.

In *Walker*, a franchisee brought an action against his franchisor seeking damages for, *inter alia*, fraud and for breach of fiduciary duty. The plaintiff claimed that U-Haul fraudulently induced him into relinquishing his ongoing business and entering into a new lease and franchise agreement under which his rent was raised to an unaffordable amount. *Id.* at 1069. The facts of the case called for the application of Mississippi's general statute of frauds, Miss.Code Ann. § 15-3-1 (1972).[13] The Fifth Circuit found that Mississippi shares the majority view which allows an action for recovery of damages incurred in reliance on a fraudulent oral promise. *Walker*, 734 F.2d at 1077-78. The court stated, in pertinent part:

Although a mere prediction of future events is ordinarily insufficient to establish tort liability on the part of the speaker, virtually all jurisdictions recognize such liability if the speaker misstates a present intention or makes a promise without the intent to perform. Mississippi follows the general rule.... Mississippi's Statute of Frauds provides that leases for a term longer than one year, and agreements not to be performed within fifteen months, must be in writing in order to be enforceable. The alleged promise to renew at a reasonable level would fall into either of those categories. Walker argues that, although the Statute of Frauds bars specific performance of the promise, it does not prevent him from recovering damages in tort.

.     .     .     .     .

We recognize that Mississippi has been staunch in its determination not to create exceptions to the statute of frauds unless such exceptions are specifically authorized by statute. *See, e.g., ... Thomas.* The cases in which this determination has been expressed, however, were suits for specific performance. Mississippi has never applied the same rule to actions seeking, not merely the benefit of the plaintiff's bargain, but damages incurred in reliance on defendant's fraudulent oral promise.

If Walker is able to prove that U-Haul promised that his rent would remain reasonable, and that it did so with no present intention to perform that promise, Mississippi law allows him to recover damages incurred by him as a direct result of U-Haul's fraud.

*Walker*, 734 F.2d at 1076-78 (citations and footnotes omitted). The Fifth Circuit, therefore, held that estoppel is a viable exception to Mississippi's statute of frauds.

---

**13.** Section 15-3-1 provides, in pertinent part: An action shall not be brought whereby to charge a defendant or other party:

.     .     .     .     .

(c) upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one year;

(c) upon any agreement which is not to be performed within the space of fifteen months from the making thereof; ...
unless, in each of said cases, the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the parties to be charged therewith or signed by some person by him or her thereunto lawfully authorized in writing.

However, while referencing *Thomas,* a UCC-governed case, the court did not discuss whether the same analysis would be proper in an action for damages where the UCC statute of frauds controls.

In *Thomas,* purchasers of stock brought an action against a stockholder seeking specific performance of an alleged oral contract to sell securities. The plaintiffs claimed that all stockholders except the defendant transferred their securities pursuant to the oral agreement; the defendant refused claiming that the plaintiffs failed to meet a condition of their agreement. *Thomas,* 355 So.2d at 658–59. Under those facts, Mississippi's UCC Investment Securities Statute of Frauds, Miss.Code Ann. § 75–8–319 (1972), controlled; however, the Mississippi Supreme Court analyzed the estoppel question with reference to the general provisions which form the basis of application of all UCC sections. *Thomas,* 355 So.2d at 661–62. The court noted that under Miss.Code Ann. § 75–1–103 (1972), principles of law and equity, including estoppel, supplement provisions of the code unless displaced by a particular provision and that Miss.Code Ann. § 75–1–203 (1972) requires that every contract or duty within the code be enforced and performed in good faith. However, the court held that those provisions do not mandate recognition of estoppel as a nonstatutory exception to the statute of frauds. *Thomas,* 355 So.2d at 662. The Mississippi Supreme Court adopted the "persuasive" reasoning of *Cox v. Cox,* 292 Ala. 106, 289 So.2d 609 (1974), where the Alabama Supreme Court found that estoppel was not a nonstatutory exception to Ala.Code § 2–201 (1940) (Recompiled 1958), a statute identical to Miss. Code Ann. § 75–2–201.

Subsequent to *Thomas,* the Mississippi Supreme Court decided *Anderson Construction Co. v. Lyon Metal Products,* 370 So.2d 935 (Miss.1979). In *Anderson,* a contractor brought an action seeking recovery of damages incurred due to a subcontractor's failure to honor a bid it submitted to the contractor. After deciding that Mississippi's UCC section 75–2–201 was controlling, the court refused "to diminish the effect of the statute of frauds by applying the principle of estoppel." *Anderson,* 370 So.2d at 937. Unlike *Thomas,* which was discussed by the Fifth Circuit in *Walker, Anderson* was an action for damages incurred as a result of reliance on an oral contract within the purview of the UCC.

Importantly, the Fifth Circuit has acknowledged Mississippi's prohibition on estoppel as an exception to the statute of frauds in cases of this nature. In *FMC Finance Corp. v. Reed,* 592 F.2d 238 (5th Cir.1979), the defendant brought a third-party action to recover damages for breach of an oral contract which was governed by Mississippi's UCC section 2–201. The court recognized that *Thomas* was "a recent decision of the Mississippi Supreme Court [that] prohibits application of the doctrine of promissory estoppel to cure failure to comply with the statute of frauds" and stated that "reliance on promissory estoppel was therefore ill placed." *Id.* at 243.

Such an interpretation of Mississippi law is consistent with decisions from other jurisdictions generally rejecting estoppel as an exception in UCC-controlled cases. For example, in *McDabco, Inc. v. Chet Adams Co.,* 548 F.Supp. 456, 459–62 (D.S.C.1982), a South Carolina district court discussed promissory estoppel in the context of the UCC:

> The Uniform Commercial Code was adopted to regulate commercial dealings. Uniformity among different jurisdictions in decisions concerning commerce was a major motivation behind development of the UCC. By so doing, it was hoped that this area of the law would become clearer and disputes would be more readily resolved.
>
> . . . . .
>
> If we were to adopt [promissory estoppel] as applicable in the context of the sale of goods, we would allow parties to circumvent the U.C.C. For example, to prove justifiable reliance (an element of promissory estoppel), the promisee may offer evidence of course of dealing between the parties.... The Official Comments to [§ 1–20–5(4)] state that the statute of frauds "restricts the actions of the parties, and ... cannot be abrogated by agreement or by a usage of trade."

*Id.* at 460–61 (citations omitted) (quoting *Lige Dickson Co. v. Union Oil of California,* 96 Wash.2d 291, 635 P.2d 103 (1981) (Washington's UCC writing requirement not avoidable by estoppel)); *see also C.G. Campbell & Son, Inc. v. Comdeq Corp.,* 586 S.W.2d 40 (Ky.Ct.App.1979) (Kentucky's section 2–201 exceptions not to be judicially amended to include estoppel); *C.R. Fredrick, Inc. v. Borg-Warner Corp.,* 552 F.2d 852 (9th Cir.1977) (California law does not allow 2–201 to be overcome by estoppel). Additionally, the court in *McDabco* noted the clear language of South Carolina's section 2–201(1) which provides that the writing requirement controls "except as otherwise provided in this section" and thus concluded that the legislature had provided the only exceptions in section 2–201(2) and (3). Mississippi's UCC statute of frauds contains identical language: "Except as otherwise provided *in this section....*" Miss.Code Ann. § 75–2–201(1) (1972) (emphasis added). Furthermore, as previously noted, Mississippi's section 75–1–103 provides that estoppel may apply "[u]nless displaced by the particular provisions of this code." A fair reading of this express language would support the Mississippi Supreme Court's holding that estoppel is not a supplementary exception to the UCC statutes of frauds, including section 75–2–201.

For the foregoing reasons, the court finds that the alleged oral agreement falls within the purview of Mississippi's UCC statute of frauds as provided in Miss.Code Ann. § 75–2–201 and that since no exception to the writing requirement applies, the absence of a writing evidencing the alleged contract precludes plaintiff's proceeding in this cause.

Therefore, it is ordered that defendant's motion for summary judgment be granted. A separate judgment shall be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

ORDERED.