Nick **WIEBERG**, d/b/a Family Memorial Planning Inc., and Family Memorial Planning Inc., Plaintiffs,

v.

**RESTHAVEN GARDENS OF MEMORY, INC.,** and Harry D. "Hap" Bledsoe, Defendants.

No. 89–1509–C.

United States District Court, D. Kansas.

Feb. 5, 1991.

Randall K. Rathbun, DePew, Gillen & Rathbun, Wichita, Kan., for plaintiffs.

Stephen P. Weir, Carpenter, Weir & Myers, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendants' motion for summary judgment (Dk. 23), motion to strike and for attorney's fees (Dk. 34), and supplemental motion for partial summary judgment (Dk. 44). This lawsuit ensues from the termination of business dealings between the parties. In October of 1986, the parties entered into a business relationship concerning Resthaven Gardens of Memory, Inc. ("Resthaven"), a cemetery and mortuary in west Wichita, Kansas. The parties executed a written sales agency contract in March of 1987, whereby Family Memorial Planning, Inc. ("Family Memorial") would market cemetery property and funeral merchandise on behalf of Resthaven. Plaintiff Family Memorial alleges the defendants breached the sales contract and owes as damages those commissions earned and the profits lost from the last eight months of the sales contract. Plaintiff, Nick Wieberg ("Wieberg"), alleges defendant, Harry D. "Hap" Bledsoe ("Bledsoe") fraudulently misrepresented his intentions to sell his stock in Resthaven to Wieberg thereby damaging Wieberg who relied upon the representation in moving his family to Wichita. Finally, Wieberg alleges Bledsoe orally agreed to sell his stock, and Wieberg seeks to recover $1,300,000 under the theory of promissory estoppel for the loss of the benefit of that bargain. Defendants generally deny the factual allegations and assert several legal challenges, some of which are the grounds of these motions.

■ A motion for summary judgment gives the judge an initial opportunity to assess the need for a trial. Without weighing the evidence or determining credibility, the court grants summary judgment when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a factfinder or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2512.

■ An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. An issue of fact is "material" if proof of it might affect the outcome of the lawsuit. 477 U.S. at 249, 106 S.Ct. at 2510. Factual inferences are drawn to favor the existence of triable issues, and where reasonable minds could ultimately reach different conclusions, summary judgment is inappropriate. *See Riley v. Brown & Root, Inc.*, 896 F.2d 474, 476–77 (10th Cir.1990).

The movant's initial burden under Fed.R. Civ.P. 56 is to show the absence of evidence to support the nonmoving party's case. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 345 (10th Cir. 1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). The movant must specify those portions of " 'the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any,' " which demonstrate the

absence of a genuine issue of fact. *Windon*, 805 F.2d at 345 (quoting Fed.R.Civ.P. 56(c)). It may be sufficient for the movant to establish that the alleged factual issues are without legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts supported by the kinds of evidentiary materials listed in Rule 56(c). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The evidence is deemed true and all reasonable inferences are drawn in his favor. *Windon*, 805 F.2d at 346. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

For purposes of these motions, the following facts are uncontroverted:

1. In October of 1986, Wieberg and Bledsoe verbally agreed that Wieberg would assume sales responsibilities for Resthaven and, in return, would receive commissions for the sales.

2. Also during these discussions, Wieberg understood Bledsoe to say that he needed someone young and enthusiastic about sales to come to Wichita and set up a sales program for Resthaven. If the person performed, Bledsoe said he was interested in selling Resthaven because he was sixty-five years old. Wieberg understood that he had to move to Wichita, build capital by generating sales under the sales contract, and prove that he could run Resthaven and make the payments necessary for purchasing it. Wieberg said that Bledsoe offered to sell his stock in Resthaven for $3,700,000 if Wieberg could come up with $1,000,000 and Bledsoe then would carry the balance of $2,700,000 over a ten year period on an annually renewable note if Wieberg also could show that he could make the payments, that he could run the pre-need sales program at Resthaven, and could generate enough receivables that if sold would pay off 60% of the $2,700,000

note one year after the stock conveyance. Wieberg also testified that Bledsoe told him: "I have had a number of ... flash in the pan guys come by saying what they could do. Before we get into that, what I want you to do is demonstrate some numbers so let's talk in terms of a sales contract and we'll get that specifically nailed down and when the receivables reach the point that I know I'll never get the damn thing back...."

3. On March 5, 1987, Wieberg and Bledsoe entered into a written agreement in which, among other things, the defendants agreed to pay commissions on sales and the plaintiffs agreed to fulfill certain sales quotas. The agreement provided for its cancellation by Family Memorial upon thirty days prior written notice to Resthaven. By letter dated April 19, 1989, plaintiffs' attorney gave thirty days notice of their intent to cancel this contract and further stated:

> This cancellation is not a voluntary act on the part of FMPI. This is only being done to avoid any unnecessary harm or interruption in your business affairs. As far as FMPI is concerned, you have deliberately breached this contract and deliberately expelled them from the premises as a practical matter.

4. Wieberg and Bledsoe never entered into any written contract concerning the sale of Resthaven stock. This sale of stock never occurred.

5. Wieberg believed that as of June 1987 he had built the receivables to a level which satisfied one of the conditions to his purchase of the stock. He recalls the last conversation with Bledsoe about acquiring the stock occurred before July 1, 1987. Wieberg believed that in late summer or early fall of 1987, defendant Bledsoe had decided to renege on the sale of Resthaven stock.

6. Plaintiffs filed this lawsuit on September 20, 1989.

## STATUTE OF FRAUDS

Defendants argue that plaintiff's claim for breach of an oral agreement to sell Resthaven stock must fail, as the agree-

ment is not in writing nor meets any of the exceptions of K.S.A. 84–8–319, and, therefore, is unenforceable. Citing *Mildfelt v. Lair*, 221 Kan. 557, 561 P.2d 805 (1977), defendant further contends the plaintiff may not recover on its fraud claim based on misrepresentations about the stock sale agreement, because a tort action may not be maintained if based on promises or representations stemming from an oral contract that is unenforceable as a result of the statute of frauds.

Plaintiff Wieberg says his claim for breach of the oral agreement to sell stock is grounded on the theory of promissory estoppel which he insists is an exception to the statute of frauds found at K.S.A. 84–8–319. In support of his argument on this exception, plaintiff cites the Kansas Comment 1983 to K.S.A. 84–8–319, which reads:

> Presumably, common law exceptions to the statute of frauds, such as promissory estoppel, would also be available under this provision, as they are under the statute of frauds in Article 2. See *Decatur Coop. Ass'n v. Urban*, 219 Kan. 171, 547 P.2d 323 (1976). See, however, *Thomas v. Prewitt*, 355 So.2d 657 (Miss.1978), where the court stated that it need not recognize estoppel as a non-statutory exception to the statute of frauds under this section.

Plaintiff also cites the case of *Kiely v. St. Germain*, 670 P.2d 764 (Colo.1983), holding that the doctrine of promissory estoppel may be invoked to enforce an oral agreement for the sale of stock in the face of a statute of frauds defense under Uniform Commercial Code provision, § 8–319.

Defendant replies that the issue of promissory estoppel being an exception to K.S.A. 84–8–319 is one of first impression in Kansas. Defendant calls the Kansas Comment 1983 to § 8–319 speculative. Additionally, defendant cites the *Thomas* case referred to in the comment as a decision counter to the *Kiely* case. Without leave of the court, plaintiff filed a response to defendant's reply and argued that *Thomas* was factually inapplicable and no longer representative of the law in Mississippi.

The availability of a promissory estoppel exception under § 8–319 has not been squarely addressed by any Kansas court to date. It is also true that other courts are divided on this issue. Nevertheless, an obvious answer is yielded from reviewing Kansas law on related issues and discerning the rationale for the different results reached on this issue.

The *Kiely* case from Colorado is only one of several that have recognized some form of promissory or equitable estoppel as an exception to § 8–319. *Bretz v. Portland General Elec. Co.*, 882 F.2d 411 (9th Cir. 1989) (Montana law); *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763 (5th Cir. 1988) (Texas law); *Goeken v. Kay*, 751 F.2d 469 (1st Cir.1985) (Massachusetts law); *Leeds v. Focom, Inc.*, No. 83 Civ. 3162–CSH, slip op., 1984 WL 729 (S.D.N.Y.1984) (New York law); *Hall v. Horizon House Microwave, Inc.*, 24 Mass.App.Ct. 84, 506 N.E.2d 178 (1987) (Massachusetts law). In each case, the courts simply extended to § 8–319 the respective state's general common-law estoppel exception that had been applied to other statutes of fraud.

The opposite pole is represented by two states. *Smith v. Baker*, 715 S.W.2d 890 (Ky.Ct.App.), *rev. denied*, (1986), and *Renfroe v. Ladd*, 701 S.W.2d 148 (Ky.Ct.App. 1985) (Kentucky law); *Thomas v. Prewitt*, 355 So.2d 657 (Miss.1978) (Mississippi law). The Kentucky Court of Appeals in both decisions relied upon its earlier decision, *C.G. Campbell & Son, Inc. v. Comdeq Corp.*, 586 S.W.2d 40 (Ky.Ct.App.1979), where it had refused an estoppel exception to the UCC statute of frauds, § 2–201, governing the sale of goods for $500 or more. The court believed the reasons for refusing equitable considerations under § 2–201 applied with equal force to § 8–319. The *Thomas* case likewise represents the approach taken in Mississippi of rejecting the estoppel exception to a statute of frauds. See e.g., *Futch v. James River–Norwalk, Inc.*, 722 F.Supp. 1395, 1401 (S.D.Miss.), *aff'd*, 887 F.2d 1085 (5th Cir.1989); *Anderson Construction Co. v. Lyon Metal Products*, 370 So.2d 935 (Miss.1979); see generally Annot., *Promissory Estoppel–*

*Statute of Frauds*, 29 A.L.R.4th 1006, 1019 (1984).

Common to both lines of cases is the approach. If an estoppel exception had been generally recognized or refused under other statutes of frauds, in particular the related UCC statute of frauds, § 2–201, then the same result would be reached under § 8–319. None of the courts attributed § 8–319 with any unique role, wording or terms that would otherwise prevent it from being uniformly subject to the general rule followed in the respective jurisdictions. The apparent question to ask now is, what is the general rule in Kansas on a promissory estoppel exception to statutes of fraud, in particular, K.S.A. 84–2–201?

In *Decatur Cooperative Association v. Urban*, 219 Kan. 171, 179, 547 P.2d 323 (1976), the Kansas Supreme Court restated the general rule in Kansas that the doctrine of estoppel was applicable to cases where the statute of frauds was asserted as a defense. The court summarized the law as follows:

Before the doctrine of promissory estoppel can be invoked in a case involving the statute of frauds the promisee must first show by competent evidence that a valid and otherwise enforceable contract was entered into by the parties. (Citation omitted). The conduct of the promissor must be something more than a mere refusal to perform the oral contract, since any party to an oral contract unenforceable under the statute of frauds has that right, and the exercise of the right of non-performance is no more a fraud than a breach of any other contract. (Citation omitted). And the promisee must show the facts of the case and the conduct of the promisor justifying application of the doctrine. We further outlined the elements of promissory estoppel in *Marker (v. Preferred Fire Ins. Co.*, 211 Kan. 427, 506 P.2d 1163 (1973)) in this fashion:

"In order for the doctrine of promissory estoppel to be invoked the evidence must show that the promise was made under circumstances where the promisor intended and reasonably expected that the promise would be relied upon by the promisee and further that the promisee acted reasonably in relying upon the promise. Furthermore promissory estoppel should be applied only if a refusal to enforce it would be virtually to sanction the perpetration of fraud or would result in other injustice." (Syl. ¶ 4.)

The vital principle [of estoppel rendering the statute of frauds inoperative] is that he who by his language or conduct leads another to do, upon the faith of an oral agreement, what he would not otherwise have done, and changes his position to his prejudice, will not be allowed to subject such person to loss or injury, or to avail himself of that change to the prejudice of such other party.

219 Kan. at 179, 547 P.2d 323. The Kansas Supreme Court in *Decatur* also applied this doctrine to the UCC statute of frauds at § 2–201. 219 Kan. at 177–78, 547 P.2d 323. The court simply reasoned that estoppel was a principle of equity not displaced by the UCC and, therefore, supplemental to it as allowed by K.S.A. 84–1–103.

This court believes the Kansas Supreme Court would follow its reasoning in *Decatur* and recognize an estoppel exception to K.S.A. 84–8–319. It has been more recently emphasized that the statute of frauds provision in the UCC is to be construed liberally to assure a just and equitable result under the circumstances. *Quaney v. Tobyne*, 236 Kan. 201, 209, 689 P.2d 844 (1984). Since the application of promissory estoppel would defeat K.S.A. 84–8–319 and its extension by *Mildfelt*, the court denies the defendants' motion for summary judgment on the statute of frauds.

Defendants' other contentions in their motion for summary judgment (Dk. 23) now appear moot as they have been resolved by either subsequent discovery or the filing of the pretrial order. This motion is denied in its entirety. Defendants' motion to strike and for attorney's fees (Dk. 34) is denied.

Turning now to defendants' supplemental motion for partial summary judgment (Dk. 44), the court finds all of the contentions riddled with questions of material

fact. The court will set forth some of the more apparent factual issues. What Family Memorial's expenses were actually incurred as a result of its sales activities for Resthaven in the last eight months of 1989? Did Family Memorial voluntarily cancel the contract on April 19 1989? When should have Wieberg discovered or realized upon the exercise of reasonable diligence that Bledsoe was not going to follow through on his promise to sell his Resthaven stock? The evidence on this question does not show the defendant is entitled to judgment as a matter of law. Was there a meeting of the minds between Wieberg and Bledsoe over the sale of stock or was it merely preliminary negotiations? On this question, neither party submitted the cited testimony as an exhibit to the summary judgment proceedings. Lacking the context for most of the proffered statements, the court is hesitant to make any legal conclusions. Whether or not the plaintiffs made reasonable efforts to mitigate their damages? Again, the evidence presented to this issue is incomplete and incapable of sustaining a conclusion of law. The court denies the defendants' motion for partial summary judgment.

IT IS THEREFORE ORDERED that the defendants' motions for summary judgment (Dk. 23), to strike and for attorney's fees (Dk. 34), and for partial summary judgment (Dk. 44) are denied.