**T.K. STANLEY, INC., Plaintiff,**

v.

**SCOTT PAPER COMPANY, a Pennsylvania Corporation, Defendant.**

**Civ. A. No. E90–0043(L).**

United States District Court, S.D. Mississippi, E.D.

June 16, 1992.

---

4. The original death certificate listed "brain tu-     mor" as the cause of death.

Thomas R. Jones, Bourdeaus & Jones, Meridian, Miss., for plaintiff.

Jackson H. Ables, Daniel, Coker, Horton & Bell, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Scott Paper Company (Scott) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff T.K. Stanley, Inc. (Stanley) has responded to the motion. The court has considered the memoranda of authorities together with attachments submitted by the parties and finds and concludes that the motion is well taken and should be granted.

Scott and Stanley are both companies involved in the timber industry. Scott operates a hardwood saw mill in Mobile, Alabama, and Stanley owns and operates a hardwood saw mill in Waynesboro, Mississippi. This case arises out of an alleged oral agreement between Keith Boyles, a Scott employee, and Steve Farrar, an employee of Stanley, concerning the timber rights to a certain tract of land in Clarke County, Mississippi known as the Hall Place. Stanley charges in this action that Scott fraudulently induced it to purchase the Hall Place by orally promising that Scott, which had previously acquired the timber rights to the property, would sell or trade the timber on the property to Stanley after Stanley purchased the property.

The tale told by Farrar concerning the alleged promise by Boyles is somewhat convoluted and in some ways seems implausible. Nevertheless, for purposes of ruling on the present motion, the court will assume that the facts relating to the transaction at issue are as claimed by Farrar, as follows. In the spring of 1989, Scott purchased from Stanley a tract of land known as the Dabney tract, including the timber rights to the property. Stanley had the Dabney tract "on the market," but because of certain family considerations,[1] Stanley had not really wanted to part with the property. Nevertheless, pursuant to a written agreement with Scott, it was agreed that Stanley would convey the Dabney property to Scott, but that Scott would thereafter transfer the property back to Stanley in exchange for other land and timber which Scott would identify and Stanley would then purchase and transfer to Scott. In other words, the parties agreed to swap or exchange the Dabney land and timber for other suitable land and timber as a means for Stanley to reacquire the Dabney tract.

In April 1989, sometime after the Dabney exchange had concluded, Stanley acquired a 2200-acre tract of land in Clarke County adjoining the 1100-acre Hall Place. According to Steve Farrar's deposition testimony, in the late summer of 1989, he contacted Keith Boyles to inquire whether Boyles was "looking at" the Hall Place, and was advised that he was. Farrar told Boyles he wanted to "work a deal" with Scott similar to the Dabney exchange, pursuant to which Stanley would end up with the Hall tract with the timber on it, "land and timber." Scott, he explained, would benefit from the exchange because Scott would ultimately get "land and timber or timber in greater volumes than what was on the Hall [sic]." At the time of this initial conversation, Boyles' only response was that "he would see what he could do." Sometime thereafter, Boyles contacted Farrar and advised that if they were going to

---

1. Stanley is a family owned and operated business.

buy the Hall Place, they had to move quickly—that day—because someone else was looking at the property. When Farrar indicated that he did not have the financing in place at the time and would therefore have to "pass," Boyles said he knew of someone that he could "place [the property] with" to give him and Farrar more time, as Farrar believed, to "get some money and get the deal worked out," the "deal" being some kind of exchange of land and timber for land and timber, or at least that is what Farrar was "wanting to do." According to Farrar, sometime after this conversation with Boyles, he learned that a Mr. W. A. Mills had purchased the Hall land and timber, and then conveyed the timber to Scott by timber deed. After Farrar learned of this, he called Boyles and told him he was ready to "consummate the deal," i.e., "the land exchange, trade, buy, or whatever terminology he would like to use." At a subsequent meeting between Boyles and Farrar, Farrar advised Boyles that he was prepared to pay Mills' asking price for the property, without the timber, and the two discussed Farrar's desire to acquire the timber rights from Scott. However, concerning those timber rights, Boyles told Farrar, "I can't give it to you." Negotiations continued between Farrar and Mills, with Boyles acting as intermediary, over the purchase price for the land, and on one occasion, Farrar decided he would not buy the land because Boyles would not also sell him the timber rights. But Farrar maintains that Boyles ultimately relented, and said "Well, I don't know how I'll get you the timber. If I have to, I'll just give you a timber deed." Farrar thus closed the deal on the land, and secured a deed from Mills. Shortly thereafter, Scott commenced logging operations on the Hall Place and never conveyed the timber rights to Stanley. Boyles' alleged statement, "I'll get you the timber," forms the basis of this action.

Scott specifically denies that Boyles ever made any promise to convey the Hall Place timber to Stanley, and instead insists that despite persistent "pestering" by Steve Farrar, Boyles consistently maintained to Farrar that Scott would not transfer the Hall Place timber rights to Stanley. According to Scott, it simply had nothing to gain from such a transaction. However, on its present motion for summary judgment, Scott takes the position that even if Boyles had orally promised to convey the timber rights to Stanley, any such contract would be unenforceable as barred by the statute of frauds. Scott further maintains that Stanley cannot avoid the statute of frauds bar by pleading its cause as one for fraudulent inducement, rather than for breach of the oral contract.

In support of its position, Scott argues that the timber which was the subject of the alleged oral agreement between Boyles and Farrar constituted goods to be severed from realty within the meaning of the sales article of the Uniform Commercial Code (UCC), Miss.Code Ann. § 75–2–107(2), which provides:

> A contract for the sale apart from the land ... of timber to be cut is a contract for the sale of goods within this chapter....

See *Bay Springs Forest Products v. Wade*, 435 So.2d 690 (Miss.1983) (Section 75–2–107 includes "[t]imber, whether cut or to be cut."). Accordingly, it contends that the applicable statute of frauds is also found in the sales article of the UCC, at Miss.Code Ann. § 75–2–201, which provides:

> a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

It is undisputed in the case *sub judice* that no writing exists evidencing the agreement described by Stanley. Stanley, though, in contrast to the position taken by Scott, denies that a writing is necessary to support its claim. More specifically, Stanley insists that its claim is not barred by the statute of frauds since the claim is not one for the enforcement of an oral contract (i.e., specific performance) or even damages for the breach of an oral contract, but rather is for the recovery of damages for

the tort of fraudulent inducement.[2] That is, its only claim is that it was induced to purchase the Hall Place by the alleged fraudulent representations of Keith Boyles that Scott would convey the timber rights to Stanley. Stanley maintains, therefore, in reliance on *Walker v. U–Haul Co. of Miss. Inc.*, 734 F.2d 1068 (5th Cir.1984), that its claim is not barred by the statute of frauds.

In *Walker*, the Fifth Circuit held that "the Mississippi statute of frauds does not bar an action for damages incurred in reliance on an oral promise that is itself unenforceable." Plaintiff asserts here that since it seeks damages incurred in reliance on Boyles' alleged oral promise to convey the timber rights on the Hall Place, rather than specific performance of that promise, its action is unaffected by the statute of frauds. In *Futch v. James–River–Norwalk, Inc.*, 722 F.Supp. 1395 (S.D.Miss.), *aff'd*, 887 F.2d 1085 (5th Cir.1989), this court held that the rule set forth in *Walker*, permitting an action in tort for damages incurred in reliance on an oral agreement which is unenforceable under Mississippi's general statute of frauds, does not apply in the case of an oral agreement governed by a UCC statute of frauds. There, the court concluded that "estoppel is not a supplementary exception to the UCC statutes of frauds, including section 75–2–201," 722 F.Supp. at 1402, based on its recognition of the Mississippi Supreme Court's refusal to embrace promissory estoppel as a nonstatutory exception to UCC statutes of fraud, *see Thomas v. Prewitt*, 355 So.2d 657 (Miss.1978) (concluding that estoppel was not a non-statutory exception to Miss.Code Ann. § 75–2–201); *Anderson Construction Co. v. Lyon Metal Products*, 370 So.2d 935 (Miss.1979) (refusing to "diminish the effect of the statute of frauds [section 75–2–201] by applying the principle of estoppel"); *see also FMC Finance Corp. v. Reed*, 592 F.2d 238, 243 (5th Cir.1979) (describing *Thomas* as "a recent decision of the Mississippi Supreme Court [that] prohibits application of the doctrine of promis-

sory estoppel to cure failure to comply with the statute of frauds" and concluding that the plaintiff's "reliance on promissory estoppel was therefore ill placed").

This court observed in *Futch* that to adopt promissory estoppel in the context of the sale of goods would be to permit parties to circumvent the UCC, the adoption of which was motivated by a desire for uniformity of decision among different jurisdictions relating to commercial matters. *Id.* at 1401 (citing *McDabco, Inc. v. Chet Adams Co.*, 548 F.Supp. 456, 459–62 (D.S.C.1982)); *see also Lige Dickson Co. v. Union Oil of California*, 96 Wash.2d 291, 635 P.2d 103 (1981) (Washington's UCC writing requirement not avoidable by estoppel); *C.G. Campbell & Son, Inc. v. Comdeq Corp.*, 586 S.W.2d 40 (Ky.Ct.App. 1979) (Kentucky's section 2–201 exceptions not to be judicially amended to include estoppel); *C.R. Fedrick, Inc. v. Borg–Warner Corp.*, 552 F.2d 852 (9th Cir.1977) (California law does not allow 2–201 to be overcome by estoppel). Thus, the court recognized a basis for the distinction between the treatment of agreements falling within the purview of the UCC statutes of frauds and those falling under the general statute of frauds. The court further explained:

> [T]he court in *McDabco* noted the clear language of South Carolina's section 2–201(1) which provides that the writing requirement controls "except as otherwise provided in this section" and thus concluded that the legislature had provided the only exceptions in section 2–201(2) and (3). Mississippi's UCC statute of frauds contains identical language: "Except as otherwise provided *in this section* ...." Miss.Code Ann. § 75–2–201(1) (1972) (emphasis added). Furthermore, as previously noted, Mississippi's section 75–1–103 provides that estoppel may apply "[u]nless displaced by the particular provisions of this code." A fair reading of this express language would support the Mississippi Supreme Court's holding that estoppel is not a supplemen-

---

**2.** Stanley concedes that a claim for enforcement of an oral contract would be barred by the statute of frauds.

tary exception to the UCC statute of frauds, including section 75–2–201.

722 F.Supp. at 1402.

Citing *Crystal Springs Insurance Agency, Inc. v. Commercial Union Insurance Co.*, 554 So.2d 884 (Miss.1989), Stanley argues that the Mississippi Supreme Court has "implied," since *Futch* was decided by this court, that it will not distinguish between the UCC statutes of frauds, including § 75–2–201, and Mississippi's general statute of frauds, § 15–3–1, such that the same nonstatutory exceptions which that court has recognized are equally applicable regardless of the applicable statute of frauds. This argument is without merit. A review of the *Crystal Springs* decision fails to reveal the implication urged by Stanley. The opinion, it is true, does not explicitly distinguish between the UCC statutes of fraud and the general statute of frauds, but that is because the statute plainly applicable to the alleged oral agreement in *Crystal Springs* was the general statute of frauds.[3] Moreover, as this court recognized in *Futch*, the Mississippi Supreme Court has refused to recognize fraud or promissory estoppel as an exception to the UCC statute of frauds.

■ It is clear, based on the foregoing, that if the alleged oral promise by Boyles falls under the UCC sales statute of frauds, then the promise is not actionable, even if the alleged basis for relief is contended to be in tort, rather than contract. In this regard, Stanley appears to contend that what was envisioned by the parties' agreement was not strictly a "sale" of the timber rights, but rather an exchange of land and timber for other land and timber,[4] and that consequently, the UCC statute of frauds is inapplicable. The court cannot agree with its position on this point. The UCC sales article defines a "sale" as "the passing of title from the seller to the buyer for a price." Miss.Code Ann. § 75–2–106. Section 75–2–304 states that "[t]he price can be made payable in money or otherwise," and can even consist of an interest in realty. When the price does consist of an interest in realty, "the transfer of the goods and the seller's obligations with reference to them are subject to this Article, but not the transfer of the interest in realty or the transferor's obligations in connection therewith." Thus, Boyles' alleged promise to convey to Stanley the Hall Place timber, i.e., the "goods" that are at issue here, whether the transaction was to take place by cash sale, swap or exchange, would be an agreement for the "sale" of goods and subject to the provisions of the sales article of the UCC, including the UCC sales article statute of frauds. Stanley's claim for fraudulent inducement is, therefore, barred. *See Futch.*

Based on the foregoing, it is ordered that defendant's motion for summary judgment is granted.

A separate judgment shall be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

---

**3.** In *Crystal Springs,* the plaintiffs alleged that the defendant insurance company knew, at the time of executing an agency agreement with the plaintiffs, that it intended to withdraw their authority to write its insurance. When the defendant thereafter terminated the agency relationship, plaintiffs were permitted to seek to recover damages for a fraudulent promise by defendant that their agency agreement would last for more than a year. 554 So.2d at 884–85. The court found *Walker,* while not binding, persuasive, and correct in its rationale that "the Mississippi Statute of Frauds does not bar an action for damages based on fraud even though the promise underlying the fraud is itself unenforceable under the statute of frauds." The ref-

erence to the "Mississippi Statute of Frauds" is an obvious allusion to Mississippi's general statute of frauds, the only statute of frauds potentially applicable to the agreement described.

**4.** Farrar has given conflicting testimony concerning the exact nature of the alleged promise or agreement. He has said that he had in mind—though not disclosed to Boyles—that he wanted to secure from Scott the timber rights on the Hall Place, either through an exchange of other land and timber for the Hall Place timber only, or other land and timber for the Hall Place land and timber, or he wanted to purchase for a cash price the Hall Place timber.